No. 85-324

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

RICHARD A. SHORS and ANN C. SHORS,

        Plaintiffs and Respondents,

   -vs-

JERRY L. BRANCH, d/b/a JERRY L. BRANCH,
Consulting Geologist and Producer,

        Defendant and Appellant.

_____

APPEAL FROM:  District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Hash, Jellison, O'Brien & Bartlett; Kenneth O'Brien,
Kalispell, Montana

     For Respondent:

          Peterson, Peterson, Burns & Shors; William L. Burns,
Cut Bank, Montana

_____

Submitted on Briefs: March 13, 1986

Decided:  June 5, 1986

Filed: JUN 5 - 1986

_Ethel M. Harrison_
_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant Mr. Branch appeals a judgment of the District Court for Flathead County. That court granted a total of $52,000 in actual and punitive damages against him, following a bench trial on plaintiff's complaint of defamation and violation of easement rights. We affirm.

Mr. Branch raises fifteen separate issues which we restate as follows:

1. Is plaintiffs' claim for damages for interference with their easement rights barred by statute of limitation?

2. Did Mr. Branch's installation and maintenance of the gate on the road extinguish the plaintiffs' easement rights by adverse possession or establish a prescriptive right to the gate?

3. Did the trial court err in permitting testimony concerning: 1) an incident in which Mrs. Shors and her children were "buzzed" by the Branch children on a snowmobile; and 2) Mr. Branch's reference to the Shors as "trouble-makers" and "hippies" and his suggestion to third parties that the Shors cabin be burned down?

4. Is there substantial evidence to support the court's findings that: a) Mr. Branch did not complete construction of the access road as required by the Declaration of Restrictions; b) Mr. Branch acted maliciously and with a reckless disregard for the plaintiffs' rights in constructing the gate; and c) plaintiffs were entitled to $2,000 for the loss of use of the vehicle access road?

5. Was the communication of the letter to the Flathead County Sheriff's Office privileged?

2

6. Was there substantial evidence to support the court's findings that: a) Mr. Branch was inspired by malice and ill-will when he forwarded the alleged defamatory letter; b) the statements contained in the letter constitute libel or libel per se; and c) the plaintiff Richard Shors was entitled to $5,000 in special and general damages in the defamation action?

7. Did the trial judge have authority to award punitive damages and did he err in setting the amount of punitive damages at $20,000 in the defamation action and $15,000 in the action for interference with the easement?

8. Did the District Court err in admitting plaintiffs' statement of attorney fees into evidence and in awarding attorney fees?

Mr. Branch also argues that the punitive damages violated the Eighth and Fourteenth Amendments to the United States Constitution. However, he did not raise this argument below and we will not consider it now. Rule 2, M.R.App.Civ.P.; Dodd v. City of East Helena (1979), 180 Mont. 518, 523, 591 P.2d 241, 244.

Jerry Branch and Carl Disel subdivided property near Essex, Montana, in Flathead County. The property borders the Middle Fork of the Flathead River. The Declaration of Restrictions governing those tracts provided for access to the river for the purchasers of the lots as follows:

> . . . This access is a specific route access, via the sixteen foot East-West access road presently in existence along the south boundary of Lots 1, 2, 3, 4 and 5, then east to the top of the hill at the south turn of the existing trail-road. From this curve, an access trail-road will be constructed by the sellers, and will run northeast along the path of most practical construction and will reach the river beach within 150 feet of survey point number seven. Future maintenance of this northeast road

3

will be the responsibility of the lot owners of the
subject lands of H.E.S. 867.

The access trail-road was understood and intended to be
suitable for two-wheel-drive vehicles under normal weather
conditions. The subdividers retained an easement over one of
the lots for construction of the access road. In 1972, they
had a trail-road constructed over the easement. At the time
it was constructed, this road was unobstructed by a gate,
fence, or other obstacle, and was passable in normal condi-
tions with a two-wheel drive vehicle.

Mr. Branch also retained a portion of the subdivided
land for his own use. Access to the river from his land was
achieved by way of a private logging road. A common road led
to Mr. Branch's road and the lot owners' road. For several
years, Mr. Branch kept a cable gate across the road to his
land, beyond the turn-off for the lot owners' access road.

Plaintiffs constructed a cabin on their lot in 1975. At
that time, the lot owners' road had sloughed off and become
strewn with rocks and trees so that it was no longer passable
with a vehicle. As a result, and in the absence of extensive
maintenance, the road to Mr. Branch's land was the only means
of vehicular access to the river for the lot owners.

In about 1976, apparently to prevent continued use of
his road by others, Mr. Branch installed a metal, lock-type
gate on the road. He installed the gate ahead of the fork in
the two roads, thereby effectively preventing plaintiffs and
the other lot owners from using either road beyond the gate.
Following installation of the metal gate, Mr. Branch discour-
aged lot owners from attempting to widen and improve their
access road. In May 1983, Mr. Branch moved the gate and
bulldozed a "cul-de-sac" road to allow for potential lot

4

owner vehicular passage to the river. He left a substantial mound of gravel at the site of the old gate.

Mr. Branch also erected "no trespassing" signs close to the river and on the road. Plaintiffs saw these signs as an additional indication of Mr. Branch's intention to keep them away from their access road, his property, and the river.

Partly as a result of the above actions, the relationship between the parties deteriorated. On occasion Mr. Branch referred to the Shors as "hippies" and "troublemakers", and suggested to third parties that plaintiffs' cabin be burned down. Also, in 1982, Mr. Branch intentionally blocked the trail to plaintiffs' cabin with logs and other debris.

In July of 1982, Mr. Branch discovered one of his "no trespassing" signs in the river, and erroneously concluded that plaintiff Mr. Shors had torn out that sign and two others. He sent a certified letter to Mr. Shors, and a copy of the letter to the Flathead County Sheriff's Department. In the letter, he stated that Mr. Shors had been observed tearing down three steel signs at the Branch property. He accused Mr. Shors and his guests of tearing down signs "in a routine manner," and threatened to file charges against Mr. Shors if the signs were not repaired or replaced. In fact, on the day in question, Mr. Shors and his family were at home in Cut Bank, Montana.

Mr. Shors, an attorney, brought suit against Mr. Branch for interference with his access to the river and for defamation. After a bench trial lasting several days, the court entered extensive findings and conclusions. The court ordered Mr. Branch to pay plaintiffs $2,000 for lost use and enjoyment of the vehicle access road for two years preceding

5

the filing of their complaint; to pay $15,000 in punitive damages for obstruction of the access road; to pay $10,000 in attorney fees incurred in connection with interference with plaintiffs' access rights under the contract; and to pay court costs. It also awarded plaintiffs $5,000 in special and general damages for defamation and $20,000 in punitive damages for defamation. It further ordered Mr. Branch not to interfere with plaintiffs' right to reconstruct, repair, and maintain the original lot owners' road, and enjoined Mr. Branch from obstructing or interfering with plaintiffs in the exercise of their rights under the Declaration of Restrictions and the court's order.

I

Is plaintiffs' claim for damages for interference with their easement rights barred by statute of limitation?

Mr. Branch argues that the two-year statute of limitation for interference with real property expired two years after the metal gate was constructed, or in 1978. This action was not brought until 1982. Mr. Branch argues that it is therefore barred by the statute of limitation.

The District Court concluded that:

> The Defendant has unlawfully and unreasonably restricted Plaintiffs' right of access, in derogation of the Declaration of Restrictions, thereby diminishing the value of their property, and their use and enjoyment thereof. Specifically, he failed to construct a proper or reasonably permanent access road, suitable for vehicular use, and prohibited Plaintiffs' and other lot-owners' free access thereto by any means in 1976 and thereafter until the filing of Plaintiffs' Amended Complaint . . .

The conclusion that Mr. Branch interfered with plaintiffs' easement right is based on both his failure to construct a proper or reasonably permanent access road and his

6

interference with plaintiffs' and the other lot owners' access to the river. The failure to construct a proper access road sounds in contract, with an 8 year statute of limitation under § 27-2-202, MCA.

As to Mr. Branch's interference with access to the river, this Court has recognized as continuing torts those torts in which the tortious act can be readily abated. Haugen Trust v. Warner (Mont. 1983), 665 P.2d 1132, 1135, 40 St.Rep. 1036, 1039. In a continuing tort, recovery may be had for damages accruing within the statutory period preceding commencement of the action. Haugen, 665 P.2d at 1135. We conclude that blockage of plaintiffs' access to the river by the gate was a continuing tort, because it was easily abated. The gate was, in fact, moved prior to trial. We hold, therefore, that the statute of limitation does not bar this action, and that damages accruing within 2 years of initiation of the suit were recoverable.

II

Did Mr. Branch's installation and maintenance of the gate on the road extinguish the plaintiffs' easement rights by adverse possession or establish a prescriptive right to the gate?

Neither of these theories were set forth in the pleadings or in the pretrial order. They were raised by motion to amend the pleadings at the close of trial. The trial court did not make specific findings as to either theory, apparently concluding that neither had been sufficiently proven.

Both adverse possession and prescriptive easement require proof of open, notorious, exclusive, adverse, and continuous possession or use for the statutory period of five years. The evidence is insufficient on several of these

7

elements. Mr. Branch did not consistently testify that he intended to keep plaintiffs from all access to their easement. He stated at one point that he would have given the lot owners keys to the gate, if they had wished to improve their access road, and testified that access on foot, snowmobile, or motorcycle could be achieved by going around the gate. During the entire time involved here, the Declaration of Restrictions remained on file with the Clerk and Recorder, publicly stating the right to the easement. Sometimes Mr. Branch's gate was left open. He did not affirmatively convey to the lot owners at any date certain his intention that they not go beyond the gate. Mr. Branch did not place his "no trespassing" signs near the gate until about 1980 or 1981. We conclude that there was insufficient proof of extinguishment of the easement rights by adverse possession or of a prescriptive right to the gate.

III

Did the trial court err in permitting testimony concerning: 1) an incident in which Mrs. Shors and her children were "buzzed" by the Branch children on a snowmobile; and 2) Mr. Branch's reference to the Shors as "trouble-makers" and "hippies" and his suggestion to third parties that the Shors cabin be burned down?

Mr. Branch objects to the admission of the above testimony on the basis of relevance. Rule 401, M.R.Evid. provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We hold that the action of the Branch children in "buzzing" the Shors on snowmobiles is irrelevant to the issue of malice on the part of Mr. Branch,

8

but that the testimony's admission into evidence was harmless, given the other independent evidence of malice. We hold that the statements by Mr. Branch were relevant as they relate to Mr. Branch's malice toward plaintiffs.

IV

Is there substantial evidence to support the court's findings that: a) Mr. Branch did not complete construction of the access road as required by the Declaration of Restrictions; b) Mr. Branch acted maliciously and with a reckless disregard for the plaintiffs' rights in constructing the gate; and c) plaintiffs were entitled to $2,000 for the loss of use of the vehicle access road?

Mr. Branch argues that these three do not have support in the record. Our standard of review is whether substantial evidence exists to support the findings and conclusions of the District Court.

Testimony by several parties, including Mr. Branch, that the lot owners' access road began sloughing off almost immediately supports the District Court's conclusion that no proper or reasonably permanent access road was constructed. There was testimony that only a few of the lots had been sold at the time the access road was constructed. Only a few lot owners had access to a useable road, and only for the short time until the road eroded. The fact that Mr. Branch built a locked gate in front of the turnoff to the lot owners' access road supports a conclusion of reckless disregard for plaintiffs' rights. Additionally, we defer to the trial court's opportunity to judge the demeanor of the witnesses, including defendant. We conclude that there was substantial evidence to support the findings that no proper or reasonably permanent access road was constructed and that Mr. Branch acted

9

with malice or a reckless disregard for plaintiffs' rights in constructing the gate.

The award of $2,000 in damages for loss of access to the river is supported by plaintiffs' testimony that they purchased their lot partially because it was represented as having access to the river, and that their use of their cabin and access to the river were curtailed as a result of Mr. Branch's actions. We conclude that the award of $2,000 was within the court's discretion.

V

Was the communication of the letter to the Flathead County Sheriff's Office privileged?

Mr. Branch argues that under § 27-1-804(1), MCA, his letter was absolutely privileged as a publication made "in the proper discharge of an official duty," because citizens have an obligation to communicate their knowledge of the commission of crimes to law enforcement officials. The statute he cites does not extend to this unsolicited complaint by a private citizen. Any duty Mr. Branch had to report the destruction of his "no trespassing" signs was a civic duty, not an official duty. We hold that the letter was not a privileged communication.

VI

Was there substantial evidence to support the court's findings that: a) Mr. Branch was inspired by malice and ill-will when he forwarded the alleged defamatory letter; b) the statements contained in the letter constitute libel or libel per se; and c) the plaintiff Richard Shors was entitled to $5,000 in special and general damages in the defamation action?

10

At trial, Mr. Branch testified that he was "only 80% sure" that he had identified Mr. Shors on the opposite bank of the river, at the time he discovered the pulled up signs. Yet he mailed a letter to the sheriff's office, in which he stated that "our signs have been consistently torn down over the past years by [Mr. Shors] and [his] guests in [the Shors] nearby cabin in a routine manner," and threatened to file "appropriate" charges and prosecute "to the fullest extent" if replacement or repair of the signs was not arranged. His characterizations of the Shors as "hippies" and "troublemakers" and his suggestion that their cabin be burned down also occurred prior to this time. We conclude that there was substantial evidence to support the court's conclusion that the letter was mailed with malice.

In Montana, libel is defined as:

> . . . a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obloquy or which causes him to be shunned or avoided or which has a tendency to injure him in his occupation.

Section 27-1-802, MCA. Judge McPhillips testified that Mr. Shors' professional reputation was jeopardized by Mr. Branch's statements in the letter. Mr. Branch testified in his deposition that the damaged signs were worth over $150; therefore, he had accused Mr. Shors of a felony. We conclude that the District Court's finding that the statements in the letter constituted libel has substantial support in the evidence.

The testimony of both Mr. and Mrs. Shors as to the mental anguish, worry, and loss of worktime caused to Mr. Shors by Mr. Branch's letter supports the award of damages.

11

Mental anguish and suffering are actual harm, and determination of the amount of damages is within the fact-finder's discretion. Gallagher v. Johnson (Mont. 1980), 611 P.2d 613, 617, 37 St.Rep. 940, 945. We hold that there was substantial support in the record for the court's award of $5,000 in actual damages on the libel issue.

## VII

Did the trial judge have authority to award punitive damages, and did he err in setting the amount of punitive damages at $20,000 in the defamation action and $15,000 in the action for interference with the easement?

Mr. Branch argues that under § 27-1-221, MCA, only a jury may award punitive damages. We have upheld the award of punitive damages by a district court sitting as the trier of fact. The statute has been construed to mean the trier of fact may award punitive damages. Miller v. Fox (1977), 174 Mont. 504, 510, 571 P.2d 804, 808.

Mr. Branch also maintains that the punitive damages awarded are disproportionate to the harm done and to his wealth. This court has rejected mathematical ratios for determining punitive damages. Butcher v. Petranek (1979), 181 Mont. 358, 364, 593 P.2d 743, 746. We will not disturb the award of punitive damages, because we conclude that the amount awarded is within the trial court's discretion.

## VIII

Did the District Court err in admitting plaintiffs' statement of attorney fees into evidence and in awarding attorney fees?

Mr. Branch objects to the admission into evidence of the statement of Mr. Shors' attorney fees, alleging that an insufficient foundation was laid. He also argues that a pro

12

se attorney is not entitled to attorney fees, that plaintiff was not the prevailing party, and that there was no clear allocation of fees between the defamation issue and the easement issue.

Mr. Shors testified to the truth and accuracy of his detailed written statement of hourly charges for legal services. He also testified to the reasonableness of his $60 hourly fee in this matter, as did Judge McPhillips, and to the reasonableness of the fees of his co-counsel, Mr Epstein. Mr. Branch has cited nothing which would require additional foundation, and we conclude that sufficient foundation was laid to show that the fees claimed were reasonable.

This Court has held that a pro se attorney is entitled to be paid for his legal services, in a case in which award of attorney fees is proper. Winer v. Jonal Corp. (1976), 169 Mont. 247, 545 P.2d 1094.

Paragraph 7 of the Declaration of Restrictions provides that costs of suit may be awarded against a person "found guilty of a breach of the provisions of this declaration." The trial court's conclusion #2 that "[t]he Defendant has unlawfully and unreasonably restricted Plaintiff's right of access, in derogation of the Declaration of Restrictions," means that the plaintiffs were entitled to their attorney fees under the contract and were the prevailing party in the contract action. They also prevailed in the defamation action. Mr. Branch's position that plaintiffs did not prevail because he was not ordered to build them a new road is unfounded. We conclude that plaintiffs were properly awarded attorney fees.

Plaintiffs submitted an itemized statement of pretrial attorney fees of over $13,000. Additionally, two attorneys

13

represented plaintiffs over three days of trial. Mr. Shors testified that over half the fees both before and during trial were attributable to the easement issue. This Court will not disturb an amount set as reasonable attorney fees absent abuse of discretion. Talmage v. Gruss (Mont. 1983), 658 P.2d 419, 420, 40 St.Rep. 176, 177. We conclude that the court did not abuse its discretion in determining that $10,000 in attorney fees were "reasonably and necessarily incurred" by plaintiffs in litigating their easement claim.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

14