No. 89-035

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

GRAVELEY RANCH,

Plaintiff and Appellant,

-vs-

THOMAS SCHERPING and ANITA SCHERPING,

Defendants and Respondents.

'89 NOV 17 AM 10 23

ED SMITH, CLERK
MONTANA SUPREME COURT

FILED

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Charles A. Graveley, Helena, Montana

For Respondent:

G. Curtis Drake and Glen L. Drake; Keller, Reynolds,
Drake, Sternhagen & Johnson, Helena, Montana

Submitted on Briefs: July 7, 1989

Decided: November 17, 1989

Filed:

_____
Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Plaintiff appeals from an order of the District Court of the First Judicial District, Lewis and Clark County, granting summary judgment in favor of the defendants, the Scherpings. The issue on appeal is whether summary judgment was properly granted based on the running of the statute of limitations. We reverse the District Court's order and remand this case for trial.

On October 29, 1987, the Graveley Ranch filed a lawsuit seeking damages for the death of 27 cows, 11 calves, the expectant offspring of those cows, and other miscellaneous expenses incurred as a result of defendants' negligence. The complaint establishes that the plaintiff holds a grazing permit for 177 head of cattle on lands adjacent to defendants' property. On September 30, 1984, defendants' residence burned to the ground, leaving lead batteries inside the foundation walls exposed with no means of protection from plaintiff's cattle which were pastured in the area during the summer of 1985. During that summer, plaintiff contends that he noticed some of his cattle "were looking very bad and were losing weight." Plaintiff traced these symptoms and resulting deaths to the exposed lead batteries, alleging that:

> . . . (plaintiff) caused some of those animals to be tested and learned that several cows had died from lead poisoning. On November 4, 1985, he received a letter from the Solid and Hazardous Waste Bureau of the Montana Department of Health and Environmental Services that the source of the lead poisoning had been pinpointed as the foundation of defendants' destroyed home.

Plaintiff contended that 27 cows and 11 calves died as a result of lead poisoning between September 1985 through the calendar year 1986.

2

In the answer, defendants' alleged as a defense that the two-year statute of limitations period provided in § 27-2-207, MCA, had run against the plaintiff prior to the filing of the action. Defendants moved for summary judgment, which plaintiff resisted on the ground that the limitation period did not begin to run until formal confirmation of the source of the injury was received. Plaintiff pinpointed November 4, 1985, as the date of formal confirmation when he allegedly received a letter from the Department of Health and Environmental Sciences.

The District Court refused to toll the statute of limitations because it concluded that plaintiff had knowledge of the actual cause of the injury prior to November 4, 1985, as evidenced by the following letter from plaintiff's counsel to the defendants dated September 25, 1985:

> . . . As a result of your failure to clean up the property, my brother has suffered the loss of at least six head of grown cattle and may incur substantial expense in drawing blood and testing the same on over 700 head of cattle. The lead poisoning has been confirmed by the State Department of Health, and the source has been identified as the lead batteries that were left at the uncleaned scene of the fire. . . .

In its Answer to Interrogatories and Requests for Admissions on July 14, 1988, plaintiff admitted that the copy of the September 25 letter was true and correct. We agree with the District Court that plaintiff's knowledge of the cause of injury as of September 25, 1985, precludes a tolling of the statute of limitations until November 4, 1985 when formal confirmation was allegedly received.

Plaintiff further contends that the statute of limitation period should be tolled until the damage was completed or stabilized. The District Court also rejected

3

this argument, concluding that once plaintiff had knowledge and confirmation of the cause of the injury, no further stabilization was necessary. We conclude that the continuing nature of the injury in this case tolls the statute, and remand the case to the District Court.

In reaching this conclusion, we must first determine the type of injury sustained by the plaintiff. A nuisance is statutorily defined in Montana as:

> Anything which is injurious to health, indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property. . .

Section 27-30-101, MCA. We conclude that the presence of exposed lead batteries on defendants' property resulting in a series of livestock deaths is potentially injurious to health and sufficiently interfered with plaintiff's use of property for grazing so as to constitute a nuisance under § 27-30-101, MCA.

Whether or not the two-year statute of limitations can be tolled in a nuisance case depends upon whether it is a permanent, temporary, or continuous nuisance. In making such a determination, this Court has followed the general statement set forth in 39 Am.Jur., Nuisance, § 141, which is restated in 58 Am.Jur.2d, Nuisance § 132, pgs. 701-702.

> The nature of a nuisance as permanent or temporary, which, as has been seen, is a question that frequently is difficult to determine, has an important bearing on the running of the statute of limitations. Where a nuisance is permanent in character, and its construction and continuance necessarily result in an injury, all damages are recoverable in only one action, and the statute commences to run from the completion of the structure or thing which constitutes or causes the nuisance. The fact that the nuisance continues does not make the cause of action a recurring one. The running of the statute

4

> is not prevented by the fact that the plaintiff
> failed to discover that permanent character of the
> injury, or its cause, in time to bring an action
> for damages.
>
> On the other hand, when the injury is not complete,
> so that the damages can be measured in one action
> at the time of the creation of the nuisance, but
> depends upon its continuance and uncertain opera-
> tion of the seasons or of the forces set in motion
> by it, the statute will not begin to run until
> actual damage has resulted therefrom. Each repeti-
> tion of a temporary continuing nuisance gives rise
> to a new cause of action, and recovery may be had
> for damages accruing within the statutory period
> next preceding the commencement of the action. . .

See Walton v. City of Bozeman (1978), 179 Mont. 351, 356, 588
P.2d 518, 521; Nelson v. CC Plywood (1970), 154 Mont. 414,
434, 465 P.2d 314, 324-25.

In Nelson, this Court held that pollution of the plain-
tiffs' groundwater by defendant's dumping of glue waste was a
continuing temporary nuisance justifying a tolling of the
statute of limitations. Although the dumping began in 1960
and plaintiffs did not file their complaint until 1965, this
Court held that the limitation period would be tolled and
that plaintiffs could recover for all damages incurred in the
two years preceding the filing date.

In Walton, supra, this Court also found a continuing
nuisance where the City of Bozeman relocated an irrigation
ditch and constructed a storm sewer which caused annual
flooding of plaintiffs' farm crops. This Court held that:

> . . . the damages caused here were a continuing
> nuisance and as such were within the applicable
> statute of limitations, because at all times, the
> City could have abated the nuisance by taking
> curative action. Since the nuisance was so termi-
> nable, it cannot be deemed to be a permanent nui-
> sance as of the creation date in 1967.

588 P.2d at 521.

The instant case is similar to Nelson and Walton. In Nelson, we held that a new cause of action arose each time the defendants dumped glue waste. Here, although the plaintiff's injury is traceable to a single nonrecurring event, the continuing presence of the exposed batteries created an ongoing hazard potentially injurious to health and interfering with plaintiff's use of the land for grazing. This hazardous situation could have been readily abated by removing the ruptured batteries from the site and cleaning the foundation walls. Thus, following our statement in Walton, because the nuisance was terminable through cleaning of the site, it cannot be deemed to be a permanent nuisance as of the date of the fire.

Our conclusion that this nuisance is continuing and temporary is further supported by our decision in Shors v. Branch (1986), 221 Mont. 390, 720 P.2d 239. In Shors, we held that the presence of a gate blocking access to a river constituted a continuing tort in that it could have been readily abated by removal of the gate. Thus, plaintiffs had a cause of action each day the gate obstructed the free use of their easement and could recover damages for the two years preceding filing of the action.

The instant case is similar to Shors. Removal of the gate in Shors could have directly remedied the situation by affording the plaintiffs the immediate unobstructed use of their easement. Here, the contaminants from the ruptured batteries could and should have been cleaned up by the defendants. An immediate cleaning of the site could have prevented the death and illness of the plaintiff's cattle. The nuisance in this case is temporary, because cleaning the site would have readily abated the hazard.

6

In contrast to a temporary, ongoing nuisance, a permanent nuisance is one where the situation has "stabilized" and the permanent damage is "reasonably certain." See Haugen Trust v. Warner (1983), 204 Mont. 508, 665 P.2d 1132, citing Blasdel v. Montana Power Co. (1982), 196 Mont. 417, 640 P.2d 889, U. S. v. Dickinson (1947), 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed 1789. In Haugen Trust, this Court held that damage caused by subdivision construction had not "stabilized" as of the date of the first flooding because:

> The extent of the damages to the basement varies from occurrence to occurrence, depending on the level of the water in the basement and the condition of the basement at the time of each flood. . . .
> The damage is not yet permanent. Therefore, the nuisance is of a temporary and continuous nature and gives rise to a separate cause of action each time it causes damage.

665 P.2d at 1135. Upon remand, plaintiffs in Haugen Trust would be allowed to recover damages for injuries suffered two years prior to the date of their complaint, assuming such damages were proven at trial.

In Blasdel plaintiffs filed suit seeking damages for property destroyed by a rising groundwater table due to the raising of Flathead Lake by the construction of Kerr Dam. Plaintiffs first complained of adverse effects to their property in 1941. They did not file their complaint until 1960. The trial court found that the water table fluctuated from year to year causing intermittent damage that did not become permanent until 1959-1960 when the water table stabilized. The court held that the statute did not begin to run until that time. We affirmed.

The instant case can be distinguished from Blasdel and Haugen Trust. Here, the damage was permanent in that six

7

The instant case can be distinguished from Blasdel and Haugen Trust. Here, the damage was permanent in that six cows had died before September 25, 1985, and the remaining damage was reasonably ascertainable through testing of the remainder of the herd. Thus, the statute is not tolled until the death or illness of the last cow poisoned. However, the presence of the lead batteries does constitute a nuisance which could have been abated at any time by the defendants. Thus, the nuisance is continuing until it is abated; the statute does not begin to run until the batteries are removed and the toxic residue cleaned from the site of the fire. If defendants have made no effort to remove the hazardous materials from the fire site, a new cause of action may arise each time a cow becomes ill or dies as a result of lead poisoning. Once the nuisance is removed, the statute of limitations will bar any action commenced later than two years after abatement of the nuisance, or discovery of the cause of the injury whichever occurs later.

In either case, the plaintiff's alleged cause and possible recovery will be limited to damages for injuries to his herd, subject to any mitigating circumstances, suffered within two years prior to the date of filing its complaint. The District Court's order granting summary judgment for defendants is reversed and the case is remanded for a trial on the merits.

Reversed and remanded for further proceedings consistent with this opinion.

_____
Justice

We Concur:


_____
Chief Justice

8

John Conway Harrison

William E. Hunt Sr

_[signature]_

John C. Sheehy
Justices

Justice L. C. Gulbrandson dissenting.

I respectfully dissent.

In my opinion, the majority has ignored recent decisions of this Court involving statute of limitations and has enlarged the discovery exception by relying upon a theory of "nuisance" under § 27-30-101, MCA, a theory which was never argued to the District Court or to this Court.

This Court, in Holman v. Hanson (Mont. 1989), 773 P.2d 1200, 1203, 46 St.Rep. 734, 738, stated:

> [W]hether there has been a "discovery" of facts sufficient to start the running of the statute of limitations is a question of law.

The majority has correctly concurred with the District Court that the plaintiff had knowledge of the cause of injury as of September 25, 1985, but then ignores this Court's comments in Bennett v. Dow Chemical Co. (1986), 220 Mont. 117, 121, 713 P.2d 992, 995,

> [T]here is no Montana precedent for utilizing discovery doctrine to toll the statute of limitations beyond discovery of the cause of an injury.

The appellant has, in effect, argued that the statute of limitations in this case should be tolled until his damages had stabilized and stated in his reply brief:

> Plaintiff had no idea how many more, if any, additional cattle would die as a result of the lead poisoning. His damages had, in no way, stabalized [sic] and, his cattle continued to die for the remainder of 1985 and all of 1986.

This argument was rejected by this Court in E.W. v. D.C.H. (Mont. 1988), 754 P.2d 817, 820-21, 45 St.Rep. 778, 783:

10

> Finally, it is argued that the running of the statutory period should be tolled because EW's injuries were not complete until after the statute of limitations had run. However, "it is not necessary to know the total extent of damages that an act causes to begin the running of the statute of limitations." . . . Few are the injuries that could not someday develop additional consequences. To adopt the theory advocated by EW would again postpone the statutory period indefinitely.
>
> Section 27-1-203, MCA, provides that "damages may be awarded . . . for detriment . . . certain to result in the future." In Frisnegger v. Gibson (1979), 183 Mont. 57, 598 P.2d 574, we construed § 27-1-203 consistent with the Montana practice of instructing juries that damages need only be reasonably certain. 183 Mont. at 71, 598 P.2d at 582. Under the Frisnegger rationale, EW could have presented evidence of, and received damages for, future harm, if any. (Citations omitted.)

In my view, the appellant's stabilization argument is without merit in view of the statement in the September 25, 1985, letter of demand that:

> As a result of your failure to clean up the property, my brother has suffered the loss of at least six head of grown cattle and may incur substantial expense in drawing blood and testing the same on over 700 head of cattle.

and the further argument of appellant set forth above that cattle "continued to die for the remainder of 1985 and all of 1986."

The majority has apparently agreed that the stabilization argument is without merit by stating in the majority opinion:

11

> Here, the damage was permanent in that six cows had died before September 25, 1985, and the remaining damage was reasonably ascertainable through testing of the remainder of the herd.

I concur that the remaining damage was reasonably ascertainable and would, therefore, affirm the ruling of the District Court.

_____
Justice

Chief Justice J. A. Turnage:

I concur in the dissent of Justice Gulbrandson.

_____
Chief Justice

12