**MONTANA POLE & TREATING PLANT and Torger L. Oaas, Plaintiff–Appellant,**

v.

**I.F. LAUCKS AND COMPANY; Monsanto Chemical Company, Reichhold Chemicals, Inc.; Dow Chemical Company, Inc., Defendants–Appellees.**

**MONTANA POLE & TREATING PLANT and Torger L. Oaas, Plaintiff–Appellee,**

v.

**I.F. LAUCKS AND COMPANY; Monsanto Chemical Company, Defendants,**

**Reichhold Chemicals, Inc., Defendant–Appellant.**

**Nos. 91–36024, 91–36101.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 7, 1993.

Decided May 10, 1993.

Bruce A. Featherstone, and C. Erika Zimmer, Kirkland & Ellis, Denver, CO, Dolphy O. Pohlman, Corette, Pohlman, Allen, Black & Carlson, Butte, MT, Edward B. Fitzpatrick, III, Legal Dept., The Dow Chemical Co., Midland, MI, C. Michael Montgomery, Green, Jarvis, Kolodny & Markusson, Denver, CO, Peter D. Braun, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, Steven S. Carey, Garlington, Lohn & Robinson, Missoula, MT, P. Keith Keller, Keller, Reynolds, Drake, Johnson & Gillespie, Helena, MT, for defendants-appellants.

Patti A. Goldman, Public Citizen Litigation Group, Washington, DC, Torger S. Oaas, Lewistown, MT, for plaintiff-appellee.

Before: WRIGHT, THOMPSON and KLEINFELD, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

A little knowledge is a dangerous thing. It may also prove costly. Montana Pole & Treating Plant appeals the district court's summary judgment ruling that its property damage claims were time-barred. Montana Pole knew of chemical contamination of its property by 1983 but did not file suit until late 1986, after the statute of limitations had run. It simply waited too long. We affirm.

## BACKGROUND:

Montana Pole operated a wood treatment plant in Butte, Montana from 1946 until May 1984. The facility made treated wood utility poles by using the chemical preservative pentachlorophenol, "penta," mixed with petroleum products. The process produced waste penta which, for several years, Montana Pole discharged, untreated, into an unlined, earthen ditch. In later years, it also allowed two open-air disposal pits to overflow periodically. The long-term, continued discharge of waste penta and oil contaminated real property on and near the treatment facility. The contamination also percolated through the sandy soil to nearby Silver Bow Creek.

Montana Pole did little on its own to remedy the penta contamination. In 1983, the state ordered it to clean up the property and submit a compliance plan. In May 1984, the state served a notice of violation and ordered Montana Pole to take corrective action. Wood treatment operations ceased early in 1984. The EPA seized Montana Pole's property under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA") in June 1985 and declared the facility a "Superfund" site. Montana Pole filed a state court complaint in November 1986 against defendant penta manufacturers seeking indemnity for CERCLA cleanup costs. It also sought compensatory damages for injury to its property, claiming negligence, products liability, breach of warranty and nuisance.

After removal to federal court and extensive discovery, the chemical companies moved for summary judgment on the basis that the statute of limitations had run. The district court granted the motion, 775 F.Supp. 1339 (1991). The court also denied

the chemical companies' summary judgment motion asserting that the failure-to-warn claims (part of the products liability and negligence causes of action) were preempted by the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136 *et seq.* This appeal and cross-appeal followed.

**ANALYSIS:**

■ We review de novo the district court's decision to grant summary judgment. *Chemical Specialties Mfrs. Ass'n, Inc. v. Allenby,* 958 F.2d 941, 943 (9th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 80, 121 L.Ed.2d 44 (1992). The interpretation of a state law question also is reviewed de novo. *State Farm Fire & Casualty Co. v. Estate of Jenner,* 874 F.2d 604, 606 (9th Cir.1989). If there are no disputed factual issues, we need determine only whether the district court correctly applied the substantive law. *Moorhead v. United States,* 774 F.2d 936, 940 (9th Cir.1985).

The parties agree that Montana Pole's property damage claims are subject to the two year statute of limitations in Montana Code Annotated 27–2–207.[1] Our task is to interpret Montana law to determine how the highest Montana court would decide this case. *See Aetna Casualty & Surety Co. v. Sheft,* 989 F.2d 1105, 1106 (9th Cir.1993).

■ The underlying purpose of statutes of limitations is fairness. Claims should be brought within a reasonable time to enable the opposing party to mount an effective defense. *E.W. v. D.C.H.,* 231 Mont. 481, 754 P.2d 817, 818–19 (1988). Fairness also requires that, under certain circumstances, the statutory bar not be strictly applied. *Id.*

For example, Montana courts have applied the "discovery doctrine" to toll the statute of limitations in situations where the plaintiff did not know or could not have known of his injury. *See Monroe v. Harper,* 164 Mont. 23, 518 P.2d 788 (1974); *Grey v. Silver Bow*

*County,* 149 Mont. 213, 425 P.2d 819 (1967). They have also applied the concepts of "continuing nuisance" and "continuing injury" to toll the statute. *See Graveley Ranch v. Scherping,* 240 Mont. 20, 782 P.2d 371, 373 (1989) *(Graveley I );* *Nelson v. C & C Plywood Corp.,* 154 Mont. 414, 465 P.2d 314, 324–25 (1970). Those courts have held also that the statute does not begin to run until the damage has "stabilized." *See Blasdel v. Montana Power Co.,* 196 Mont. 417, 640 P.2d 889 (1982). Montana Pole argues that all these theories apply and that the district court erred in finding the action time-barred.

**A. Discovery Rule**

■ Montana Pole maintains that because it had the full use and enjoyment of its property, it did not have adequate knowledge of any compensable injury until the EPA seized the facility in June 1985. Montana statutes do not define the time when a tort action accrues.[2] Generally, courts have held that it accrues upon injury. *Buhl v. Biosearch Medical Products,* 635 F.Supp. 956, 959 (D.Mont.1985); *Much v. Sturm, Ruger & Co.,* 502 F.Supp. 743, 744 (D.Mont.1980), *aff'd* 685 F.2d 444 (9th Cir.1982); *Northern Montana Hospital v. Knight,* 248 Mont. 310, 811 P.2d 1276, 1279 (1991) (explaining that when an injury is consequential, rather than direct, the negligence action accrues upon injury). A party's ignorance of its rights or even the facts out of which a cause of action arises does not toll the statute of limitations. *Bennett v. Dow Chemical Co.,* 220 Mont. 117, 713 P.2d 992, 994–95 (1986).

Therefore, the critical determination of when an action accrues is knowledge of the facts essential to the cause of action. *See Thompson v. Nebraska Mobile Homes Corp.,* 198 Mont. 461, 647 P.2d 334 (1982). This does not mean that a party must know every fact relating to the claim before the statute

---

1. MCA 27–2–207 reads: **"Injuries involving property.** Within 2 years is the period prescribed for the commencement of an action for: (1) injury to or waste or trespass on real or personal property; (2) taking, detaining, or injuring any goods or chattels, including actions for the specific recovery of personal property; (3) killing or injuring stock by a railroad corporation or company."

2. MCA 27–2–102 states that an action "accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action[.]"

begins to run. *See E.W.*, 754 P.2d at 820 (explaining that the total extent of damages need not be known).

■ Montana Pole concedes that it knew no later than 1983 that penta contamination had damaged its property. It also knew that the contamination was permanent in that it would continue until cleaned up. It could have made a property damage claim before the complete loss of the use and enjoyment of its property. *See Spackman v. Ralph M. Parsons Company,* 147 Mont. 500, 414 P.2d 918, 922 (1966). Therefore, the statute began to run well before the EPA seized the property. The seizure was, at most, the ultimate act of the regulatory agency after Montana Pole ignored all previous directives to take corrective action.

■ At oral argument, Montana Pole asserted that the statute of limitations should be tolled because of the chemical companies' fraudulent misrepresentations. It alleged that those manufacturers represented to it that the property was not damaged by the penta, that penta was biodegradable and that any contamination would go away on its own. We ordinarily need not consider an issue not timely raised in appellant's opening brief. *United States v. Ullah,* 976 F.2d 509, 514 (9th Cir.1992). We hold that Montana Pole waived this issue.

### B. Continuing Nuisance/Continuing Injury

■ Montana recognizes a continuing nuisance/continuing injury claim where the injurious conduct is temporary, recurring and abatable. The theory is that each new act gives rise to a separate cause of action. The statute of limitations is tolled until the source of the injury is abated. *Graveley I,* 782 P.2d at 373.

Montana Pole argues that because the injury to its property continued over an extended time, the district court should have applied the continuing nuisance/continuing injury theory. It seeks damages for injuries to the property during the two years before it filed suit. So far, Montana courts have applied the continuing nuisance/continuing injury rationale only to nuisance cases. Montana Pole cites no broader authority but

asks that we extend the theory to cover its negligence and products liability causes of action.

It relies first on *Lahman v. Rocky Mountain Phosphate Co.,* 161 Mont. 28, 504 P.2d 271 (1972), to argue that knowledge of injury to property does not preclude tolling of the statute of limitations. In *Lahman,* neighboring property owners complained of noxious smoke emissions from a phosphate manufacturing plant. *Id.* 504 P.2d at 272. After receiving the complaints, the phosphate plant began to take measures to reduce the smoke emissions. *Id.* The property owners filed suit four and a half years after the emissions began, alleging that the nuisance was "continuous and unremitting" during the two-year statutory period. *Id.* The court submitted the case to the jury to consider the damage claims during the two years before the suit was filed. *Id.*

■ The nuisance in *Lahman* originated on property of the defendant phosphate plant, was temporary and recurring, and was abatable by the manufacturing plant. In contrast, none of the chemical companies in our case had any control over the release of waste penta. It did not emanate from their property nor could they abate the release.

Montana Pole next argues that its situation is like that of the plaintiffs in *Nelson,* 465 P.2d at 314. There, a plywood manufacturing plant polluted the plaintiffs' groundwater by dumping glue waste. The plywood manufacturer continued dumping the waste during the statutory period. The court concluded that the dumping did not cause a permanent injury because it was removable. *Id.* at 325. As such, the dumping was a "continuing temporary nuisance" which entitled plaintiffs to recover for damages occurring within the two-year statutory period preceding their complaint. *Id.*

The situation here differs from *Nelson* in one striking respect: no waste was released during the statutory period because Montana Pole ceased operations early in 1984.

Finally, Montana Pole relies on *Graveley I,* 782 P.2d at 371, where plaintiff sought damages for injuries to his cattle that were poisoned by lead acid batteries left in a building

on the defendant's property. The Montana Supreme Court held that the presence of lead acid batteries on defendant's property was a continuous and temporary nuisance, rather than permanent, which defendant could have abated at any time. *Graveley Ranch v. Scherping (Graveley II)*, 247 Mont. 310, 806 P.2d 29, 30 (1991). As long as the defendant refused to remove the batteries, a new cause of action arose each time a cattle injury occurred.

Yet in *Graveley II,* after learning that plaintiffs constructed a fence around the defendant's property more that two years before filing suit, the court found that the injury had been abated. 806 P.2d at 30. After the fence was up, the defendant could not have been responsible for poisoning more cattle. *Id.*

Similarly, when Montana Pole ceased wood treatment operations by May 1984, no penta products were used at the site. No defendant could have been responsible for any further damage to Montana Pole's property. The injury was effectively abated no later than May 1984. The argument that the injury continued into the statutory period because the penta contamination remained on the property is simply unpersuasive. In *Graveley I*, the court explained that "[t]he fact that the nuisance continues does not make the cause of action a recurring one." 782 P.2d at 373.

### C. Stabilization

■ Finally, Montana Pole argues that, even if its property damage was permanent, it did not stabilize until the EPA seizure in June 1985. Montana Pole relies upon *Blasdel v. Montana Power Co.*, 196 Mont. 417, 640 P.2d 889 (1982), an inverse condemnation action. There, plaintiffs sued for damages to real property caused by the rising water table following the construction of a dam nearby. They first complained of injury to their property in 1941 but did not file their complaint until 1960, 19 years later. The *Blasdel* court found that, because the water table fluctuated, causing intermittent damage until it stabilized in 1959–60, the statute began to run at that time.

Montana Pole has not identified an analogous injury requiring stabilization. As the *Graveley I* court explained: "In contrast to a temporary, ongoing nuisance, a permanent nuisance is one where the situation has 'stabilized' and the permanent damage is 'reasonably certain.'" 782 P.2d at 374. The statute is *not* tolled until all possible injury has occurred but rather only until the damage is reasonably ascertainable. *Id.* at 375.

Montana Pole knew the source of the penta and that it had to clean the site when it ceased plant operations. The EPA seizure in 1985 is not relevant in determining the amount of damages. Because the damages were sufficiently stabilized and permanent in May 1984, the statute of limitations began to run no later than that.

### CONCLUSION:

The district court correctly ruled that the statute of limitations bars Montana Pole's claims. It began to run either in 1983, when Montana Pole acknowledges damage to its property or by May 1984, when the penta contamination without question had abated and stabilized. In either case the November 1986 filing exceeded the statutory two-year limit.

Because we affirm the summary judgment that the property damage claims were time-barred, we do not reach the preemption issue raised on cross-appeal.

**AFFIRMED.**