No. 97-614

293 Mont. 531

975 P. 2d 1258

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 67

JOHN GOMEZ,

Plaintiff and Appellant,

v.

STATE OF MONTANA, and its responsible agents

or agencies of the State of Montana as Does One

through Five; and other unknown defendants as

Does One through Ten,

Defendants and Respondents.

No

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Richard J. Pyfer (argued); Small, Hatch, Doubek & Pyfer, Helena, Montana

For Respondents:

Michael R. King (argued), Special Assistant Attorney General, Risk

Management & Tort Defense Division, Department of Administration,

Helena, Montana

For *Amicus Curiae*:

Elizabeth A. Brennan; Rossbach Brennan, Missoula, Montana

(for Montana Trial Lawyers Association)

Argued: October 20, 1998

Submitted: November 19, 1998

Decided: April 1, 1999

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

**¶1. John Gomez (Gomez) appeals from the judgment entered by the Fourth Judicial District Court, Missoula County, on its order granting summary judgment to the State of Montana (State). We affirm.**

**¶2. The issue on appeal is whether the District Court erred in granting summary judgment to the State on the basis that Gomez's causes of action were barred by the applicable statute of limitations.**

BACKGROUND

**¶3. Gomez was employed by the City of Missoula, Montana (City), from May of 1988 to December 4, 1992. His job duties included painting city streets and cleaning painting equipment. The paints and other chemicals with which Gomez worked were supplied by the State from a State facility located in Missoula.**

¶4. Shortly after beginning his employment with the City, Gomez began experiencing medical problems which included headaches, respiratory ailments, nasal polyps and infections; he believed his medical problems were connected to his exposure to paint and chemical fumes at work. Gomez first sought medical treatment in June of 1989 and subsequently was referred to four doctors, each of whom eventually confirmed his belief that his medical problems stemmed from his workplace exposure to chemical fumes.

¶5. In June of 1992, Gomez filed a claim for workers' compensation benefits from the City in which he stated that he had been injured by exposure to paints, solvents and chemicals in his workplace. The claim apparently was determined to be compensable as an occupational disease in August of 1992. In the fall of 1992, Gomez retained an attorney for the purpose of suing the State for damages arising from his medical problems. Notwithstanding Gomez's belief that he had a cause of action against the State at that time, however, he did not initiate legal proceedings. Gomez subsequently terminated his employment with the City on December 4, 1992.

¶6. Several years later, Gomez again retained an attorney and filed a claim against the State with the Risk Management and Tort Defense Division of the Department of Administration (RMTD). The RMTD received the claim on November 6, 1995, and denied it on March 4, 1996. Gomez then filed a complaint against the State in the District Court on April 2, 1996, alleging that he had been permanently injured by products manufactured or distributed by the State and used by him during his employment with the City, and bringing causes of action based on products liability, negligence and breach of the implied warranties of fitness and suitability. The State answered the complaint, conducted discovery and moved the District Court for summary judgment based on its assertion that all of Gomez's causes of action were barred because the statute of limitations had run. The District Court granted the State's summary judgment motion and entered judgment accordingly. Gomez appeals.

## STANDARD OF REVIEW

¶7. We review a district court's ruling on a summary judgment motion *de novo*, using the same Rule 56, M.R.Civ.P., criteria applied by the district court. Ross v. City of Great Falls, 1998 MT 276, ¶9, 967 P.2d 1103, ¶ 9, 55 St.Rep. 1127, ¶ 9. Rule 56(c), M.

**R.Civ.P., provides that**

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In the usual summary judgment case, we begin our review by determining whether the moving party established the absence of genuine issues of material fact. <u>Ross</u>, ¶ 10. Here, however, the parties agree on the material facts and, as a result, the question before us is whether the District Court correctly concluded that the State was entitled to judgment as a matter of law. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. <u>Ross</u>, ¶ 10.

## DISCUSSION

**¶8. Did the District Court err in granting summary judgment to the State on the basis that Gomez's causes of action were barred by the applicable statute of limitations?**

**¶9. Before addressing the issue before us, it is appropriate to briefly review statute of limitations principles applicable to factual scenarios similar to the present case. First, the parties do not dispute that the three causes of action Gomez alleged against the State--products liability, negligence and breach of implied warranties--sound in tort and that tort actions must be commenced within three years of the date the cause of action accrues. <u>See</u> § 27-2-204(1), MCA; Hando v. PPG Industries, Inc. (1989), 236 Mont. 493, 501, 771 P.2d 956, 961; Bennett v. Dow Chemical Co. (1986), 220 Mont. 117, 122, 713 P.2d 992, 995.**

**¶10. Section 27-2-102(1)(a), MCA, provides that**

a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action . . . .

A party's lack of knowledge of a cause of action or its accrual generally does not postpone the commencement of the statute of limitations period. Section 27-2-102(2), MCA. Under the "discovery rule," however, the limitations period does not begin to run when the facts constituting a claim or cause of action for personal injury are, by their nature, concealed or self-concealing, until the injured party has discovered the facts constituting the claim or, with due diligence, should have discovered those facts. See § 27-2-102(3)(a), MCA; Kaeding v. W.R. Grace & Co., 1998 MT 160, ¶ 17, 961 P.2d 1256, ¶ 17, 55 St.Rep. 640, ¶ 17.

¶11. **We previously have held that, where a person's exposure to chemicals or other substances results in a latent disease or injury, the situation involves facts which, by their nature, are self-concealing. See, e.g., Hando, 236 Mont. at 501-02, 771 P.2d at 962; Kaeding, ¶ 17. Consequently, in latent disease or injury cases, the point at which the statute of limitations begins to run is ascertained by applying the discovery rule and determining when the injured person knew or, in the exercise of due diligence, should have known of the facts constituting the cause of action.**

¶12. **Finally, when a claim is filed with the RMTD prior to bringing suit, the statute of limitations on the claim is tolled for 120 days from the date the RMTD receives the claim. Section 2-9-301(2), MCA. Thus, in the present case, when the RMTD received Gomez's claim on November 6, 1995, the three-year statute of limitations applicable to his tort causes of action was tolled for 120 days.**

¶13. **The District Court applied the above principles in analyzing whether Gomez's causes of action were barred as a matter of law. Applying the three-year tort statute of limitations and tolling that limitations period for 120 days as a result of Gomez filing his claim with the RMTD, the court counted backward 3 years and 120 days from April 2, 1996--the date on which Gomez filed his District Court complaint--and determined that, if Gomez's causes of action against the State accrued prior to December 3, 1992, they would be time barred. It then determined, based on the medical notes and reports from Gomez's doctors filed by the State in support of its motion for summary judgment, that the latest time Gomez knew or should have known that his medical problems were caused by exposure to paint and chemical fumes at his workplace was November of 1992. As a result, the District Court concluded that, under the discovery rule, Gomez's causes of action accrued prior to December 3, 1992, and were barred by the three-year statute of limitations.**

¶14. Gomez does not challenge the District Court's calculations or conclusions regarding application of the discovery rule. Indeed, he concedes that, if the discovery rule is applied to the facts of this case, his claims are barred. Gomez contends, however, that his exposure to the chemical fumes which allegedly injured him occurred each day he worked for the City and was in the nature of a continuous tort. He argues that, because the harmful exposure to the chemicals was continuous, his causes of action did not accrue until December 4, 1992, his last day of employment with the City and the date of his last exposure to the paint and chemicals which allegedly caused his injury. Contending that the three-year statute of limitations for his tort claims did not begin to run until that date, Gomez asserts that the District Court erred in concluding that his complaint was time barred.

¶15. Acknowledging that we have never expressly adopted a continuous tort theory in determining when the statute of limitations begins to run in a latent disease case where exposure to a harmful substance occurs over an extended period of time, Gomez advances a number of arguments in support of his assertion that we should adopt such a theory in this case. He first asserts that we recognized in Hando that, where a person is exposed to paint fumes in the workplace over a period of time, the statute of limitations does not begin to run until the "last on-the-job exposure" to the fumes. Thus, according to Gomez, we have "hinted" that we would apply a continuous tort theory under such circumstances. We disagree.

¶16. The plaintiff in Hando brought a tort action asserting that she had been injured by repeated exposure to paint manufactured by one of the defendants. Hando, 236 Mont. at 496, 771 P.2d at 958. In addressing the statute of limitations question, we held that the limitations period began to run when the plaintiff received a medical opinion linking her injuries to her exposure to the paint. Hando, 236 Mont. at 502, 771 P.2d at 962. Stated differently, the statute of limitations began to run at the point when the plaintiff "discovered" the causal connection between her injuries and her exposure to the paint.

¶17. The portion of Hando on which Gomez relies for his proposition that we "hinted" at our agreement with a continuing tort theory is the paragraph outlining the defendants' argument that the limitations period began to run after the plaintiff's last exposure to the paint rather than at the later time when a medical opinion linked her injuries to the paint exposure. See Hando, 236 Mont. at 500-01, 771 P.2d at 961. We did not discuss that argument in Hando, much less express or suggest agreement

with--or willingness to adopt--the defendants' argument in that regard. Indeed, in holding that the limitations period ran from the date the plaintiff discovered the connection between her injuries and the paint exposure, we implicitly rejected the defendants' continuing tort--or "last on-the-job exposure"--theory. We conclude that Hando does not support Gomez's argument for adoption of that theory in this case.

¶18. Next, Gomez cites to two cases in which we held that, where a nuisance is of a continuing nature and can be readily abated, a new cause of action accrues each time the nuisance causes damage and the statute of limitations period for the last possible cause of action begins to run from the date the nuisance is removed. See Graveley Ranch v. Scherping (1989), 240 Mont. 20, 782 P.2d 371; Shors v. Branch (1986), 221 Mont. 390, 720 P.2d 239. He argues that his continuing exposure to paint and chemical fumes while working for the City is analogous to the continuing nuisances in Graveley Ranch and Shors because the State readily could have abated the harmful exposure by making its products safer, removing the products from his workplace or otherwise protecting him from the deleterious effects of the chemicals. On this basis, Gomez urges us to extend the accrual rule applied in those continuing nuisance cases to cases in which a latent disease is caused by continuing exposure to chemicals or other substances, and hold that the statute of limitations on his claims did not begin to run until his exposure to the chemicals was abated by his terminating his employment with the City on December 4, 1992.

¶19. In Graveley Ranch, the plaintiff filed a complaint alleging that a number of its cattle died from lead poisoning caused by leaking batteries located on the defendant's property. The defendant moved for summary judgment, arguing that the two-year statute of limitations began to run when the plaintiff discovered the cause of the injury to its cattle and barred the plaintiff's action. Graveley Ranch, 240 Mont. at 21-22, 782 P.2d at 372. We held that the presence of the batteries was a continuing nuisance and that, for as long as the batteries remained on the property, a new cause of action arose each time one of the plaintiff's cattle died. Graveley Ranch, 240 Mont. at 25, 782 P.2d at 375. In Shors, the plaintiffs brought an action for damages based, in part, on their allegation that the defendant had built a gate across a road which blocked the access from their property to a nearby river. Shors, 221 Mont. at 396, 720 P.2d at 243. In addressing the defendant's argument that the action was barred by the two-year statute of limitations, we held that the presence of the gate was a continuing nuisance because it easily could be abated by removing the gate and, therefore, the plaintiffs could recover damages for causes of action accruing within

two years prior to the initiation of the lawsuit. <u>Shors</u>, 221 Mont. at 397, 720 P.2d at 243-44.

¶20. In both <u>Graveley Ranch</u> and <u>Shors</u>, although the nuisance was a continuing presence on the property, the injuries resulting from the nuisance were discrete incidents--the death of a cow or the inability to access the river each time the plaintiffs desired to do so--with each injury creating a new cause of action. In the present case, however, while the purportedly tortious actions were continuous in nature, the injuries Gomez alleges resulted therefrom were not discrete incidents separable from each other. Rather, Gomez alleges that his medical problems began almost immediately upon beginning his employment with the City, gradually increased in severity over time and eventually became a permanent condition. In light of the notable difference between the nature of the injuries alleged by Gomez here and those in <u>Graveley Ranch</u> and <u>Shors</u>, we conclude that the cases are distinguishable and decline to extend the continuing nuisance theory to the facts of the present case.

¶21. Next, Gomez cites to several cases from other jurisdictions which have applied a continuing tort theory to toll the statute of limitations for claims such as sexual harassment, employment discrimination, false imprisonment, infliction of emotional distress and breach of contract until the last day on which the plaintiff was exposed to the alleged tortious conduct. <u>See</u> Mears v. Gulfstream Aerospace Corp. (Ga. App. 1997), 484 S.E.2d 659; Black v. Rieth-Riley Const. Co., Inc. (S.D. Ind. 1997), 957 F. Supp. 177; C.B. Realty and Trad. v. Chicago & N.W. Ry. (Ill. App. 1997), 682 N.E.2d 1136; Rendall-Speranza v. Nassim (D.D.C. 1996), 942 F.Supp. 621; Leonhard v. United States (2nd Cir. 1980), 633 F.2d 599; Thomas v. City of New York (E.D.N.Y. 1993), 814 F.Supp. 1139. On the basis of these cases, he posits that the trend in other jurisdictions supports applying a continuing tort theory to toll the statute of limitations in a latent disease case until the last day on which the injured person is exposed to the harmful substance. We disagree.

¶22. The courts in the above-cited cases applied law from the states of Georgia, New York, Indiana and Illinois, as well as from the District of Columbia. However, when addressing statute of limitations questions in latent disease cases, each of these jurisdictions applies the discovery doctrine, rather than the continuing tort theory, to determine when the cause of action accrues. <u>See</u>, <u>e.g.</u>, King v. Seitzingers, Inc. (Ga. App. 1981), 287 S.E.2d 252; Anderson v. Sybron Corp. (Ga.App. 1983), 299 S.E.2d

160 (aff'd Sybron Corp. v. Anderson (Ga. 1983), 310 S.E.2d 232); N.Y. C.P.L.R. 214-c (2) (codifying discovery rule in latent injury cases); Whitney v. Quaker Chemical Corp. (N.Y. 1997), 683 N.E.2d 768; Allied Resin Corp. v. Waltz (Ind. 1991), 574 N.E.2d 913. Nolan v. Johns-Manville Asbestos (Ill. 1981), 421 N.E.2d 864; Owens-Corning Fiberglas Corp. v. Henkel (D.C. App. 1997), 689 A.2d 1224. Consequently, we conclude that the cases on which Gomez relies, which involve claims for injuries other than latent diseases, are not persuasive authority for his argument that we should extend the continuing tort theory to latent disease cases.

¶23. Furthermore, the Texas Supreme Court recently observed that "almost every jurisdiction applies some formulation of the discovery rule, either legislatively or judicially, in latent injury and disease cases." Childs v. Haussecker (Tex. 1998), 974 S.W.2d 31, 37. The Texas court supported its observation with statutory and case citations from 37 states and the District of Columbia applying the discovery doctrine in latent injury cases. Childs, 974 S.W.2d at 37, n.2. Indeed, the only state we have located which applies a continuing tort--or last on-the-job exposure--rule under any circumstances in determining when the statute of limitations begins to run in latent disease cases is Alabama.

¶24. In Garrett v. Raytheon Co., Inc. (Ala. 1979), 368 So.2d 516, 521, for example, the Alabama Supreme Court specifically declined to apply the discovery rule to a latent disease case and held that the statute of limitations began to run from the time the plaintiff was last exposed to the radiation which injured him. In so holding, the court noted that the Alabama legislature had the inherent power to determine the date of accrual of--and the time within which to bring--a claim and that the legislature had never enacted a statute authorizing application of the discovery rule to determine when causes of action accrue. Absent legislative recognition of the discovery rule, the Alabama courts consistently refused to judicially adopt the rule. Garrett, 368 So.2d at 520-21. In later cases, however, Alabama has applied the discovery rule in some latent disease cases after the legislature enacted statutes authorizing application of the rule in specific circumstances such as cases involving asbestosis. See, e.g., Cazalas v. Johns-Mansville Sales Corp. (Ala. 1983), 435 So.2d 55. Thus, it appears that even Alabama considers the continuing tort theory to be less desirable than the discovery rule and applies it only where constrained to do so by lack of legislative authority to apply the discovery rule. In Montana, of course, the discovery rule is statutory. See § 27-2-102(3)(a), MCA.

**¶25. Finally, it is our view that applying a continuing tort theory to determine that Gomez's causes of action accrued--and the statute of limitations began to run--on the date of Gomez's last exposure to the paint and chemical fumes is contrary to the general policy underlying statutes of limitation.**

The primary purpose of statutes of limitations is the suppression of stale claims which, with the attendant passage of time, inhibits a party's ability to mount an effective defense. . . . The policy underlying the bar imposed by statutes of limitations is, at its roots, one of basic fairness. Our system of jurisprudence is designed to achieve substantial justice through application of the law after the parties have had an opportunity to fully present both sides of a controversy. The failure to bring an action within a reasonable time is clearly not conducive to a full presentation of the evidence nor a search for the truth. Consequently, the law will not reward the plaintiff who sleeps on his or her rights to the detriment of a defendant.

E.W. v. D.C.H. (1988), 231 Mont. 481, 484, 754 P.2d 817, 818-19. Here, Gomez was aware of his injuries, of the cause of those injuries and of the fact that he had a cause of action against the State by November of 1992, if not earlier, yet he did not take action on his claims until 1996. In essence, Gomez has slept on his rights and should not be rewarded under the law for his lack of diligence. Furthermore, to apply a continuing tort theory to delay the beginning of the limitations period until the last injurious exposure to a harmful substance, thereby allowing and even encouraging injured persons to remain in harmful conditions for

an indeterminate amount of time, could delay the running of the limitations period indefinitely. We previously have concluded that such a result is unacceptable. See E.W., 231 Mont. at 486-87, 754 P.2d at 820-21; Bennett, 220 Mont. at 121-22, 713 P.2d at 995.

**¶26. In light of these policy considerations and the dearth of authority supporting Gomez's arguments, we decline to adopt a continuing tort theory to determine the accrual date of Gomez's causes of action under the facts of this case. Consequently, we hold that the District Court did not err in concluding that, under the three-year tort statute of limitations and the discovery rule, Gomez's complaint was not timely filed and in granting summary judgment to the State on the basis that Gomez's causes of action were barred by the applicable statute of limitations.**

**¶27. Affirmed.**

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

Justice Terry N. Trieweiler specially concurring.

**¶28. I concur that in the greater number of cases the discovery rule is fairer to most parties, whether plaintiff or defendant, than the last injurious exposure rule or continuing tort rule when occupational diseases are alleged to have been tortiously caused. Therefore, as applied to the facts in this case, I concur in the result of the majority opinion. However, I do not agree with all the reasons stated for that opinion and, therefore, specially concur.**

/S/ TERRY N. TRIEWEILER

Justice William E. Hunt, Sr., joins in the foregoing specially concurring opinion of Justice

Terry N. Trieweiler.


/S/ WILLIAM E. HUNT, SR.