No. 87-470

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

E. and D. W.,

      Plaintiffs and Appellants,

  -vs-

D. C. H.,

      Defendant and Respondent,

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

      William Boggs and Jeanne Kemmis, Missoula, MT

    For Respondent:

      Randy J. Cox; Boone, Karlberg and Haddon, Missoula, MT
      Patrick F. Hooks; Hooks and Budewitz, Townsend, MT

    For Amicus Curiae:

      Peter Michael Meloy, Helena, MT, (NOW)
      Sally F. Goldfarb; Lynn, Hecht and Schafran, New York, NY,
      (NOW)

---

Submitted on Briefs: March 11, 1988

Decided: May 3, 1988

Filed: MAY 3 - 1988

*Ethel M. Harrison*
_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.


Plaintiffs appeal the memorandum and order of the District Court of the Fourth Judicial District, Missoula County, which found that plaintiffs' claims were barred by the statute of limitations governing torts, § 27-2-204, MCA. We affirm.

Plaintiffs present the following issues for review:

1. Was the statute of limitations tolled in this case of incest by the delayed-discovery rule?

2. Did the District Court correctly refuse to apply the fraudulent concealment doctrine?

3. Did the District Court correctly determine that there were no genuine issues of material fact?

The controversy at hand arose as a result of the alleged sexual molestation of plaintiff (EW) by her step-uncle (DCH) from 1957 until 1964. Throughout the course of the proceedings, DCH has vigorously denied that he sexually molested EW. However, for purposes of our review, the factual allegations presented by EW will be regarded as true.

EW was born in 1952, the oldest of three girls. Following her father's death in a boating accident, EW's mother remarried in 1956. The new family subsequently settled on a ranch operated by her stepfather's extended family.

EW first met her step-uncle when she was four years old. As members of the same family, DCH and EW were in frequent contact. DCH's kindness, tenderness, and affection in an otherwise harsh family environment soon caused EW to feel very close to her step-uncle.

The first instance of sexual fondling is alleged to have occurred in 1957, when EW was five years old. Immediately following the attack, EW was informed that the fondling would be "our special secret . . ." Incidents of manual manipulation allegedly continued on a regular basis for a period of four years.

DCH is alleged to have first engaged in an episode of forced sexual intercourse with EW during the summer of her ninth year. Following the attack, EW was instructed not to reveal what had occurred or her step-father would be harmed. She was also reminded that her mother would be very angry if she found out what had happened.

The sexual attacks continued over 3½ years until the summer of 1964. At that time, EW revealed the incidents of sexual abuse to a slightly younger friend who had also been molested. Although EW attempted to swear the friend to secrecy, she was soon confronted with the allegations by her mother and step-father. Upon confirming the attacks, EW was not allowed to have further contact with DCH.

In an attempt to verify EW's allegations, the family sought medical confirmation of sexual activity. Dr. William Antonioli examined EW in August, 1964. At that time, Dr. Antonioli determined that EW had a pronounced disruption of the hymen. He was not consulted about possible psychological effects nor was the matter ever raised with him again.

EW suffered emotional and physical disorders as a young adult. Although she always knew she had been molested, she did not associate her psychological problems with the molestation. In 1976, while undergoing a divorce, EW was referred to Dr. Stanley Moisey for psychiatric counseling. During the initial interview, EW informed Dr. Moisey that she had been molested as a child. Dr. Moisey noted it in his records, but never discussed the matter further.

In 1983, EW again sought psychiatric counseling in connection with another potential divorce. Following the initial interview, Dr. June Allison indicated that she suspected a causal relationship between EW's continuing emotional problems and DCH's childhood attacks. After additional therapy, EW and her husband filed suit in 1986 alleging assault and battery, intentional infliction of emotional distress, negligence, and loss of consortium. Shortly thereafter, the District Court granted summary judgment on the basis of the running of the statute of limitations.

## DISCOVERY DOCTRINE

On the face of the complaint, it is apparent that the statutory period for bringing an action sounding in tort has expired. EW contends, however, that the running of the statute of limitations was tolled pursuant to the "discovery rule" because her injuries had not fully manifested, she was not aware of her legal rights, and she was not aware of the causal relationship between her injuries and the molestation, until she received therapy in 1983. We disagree.

The primary purpose of statutes of limitations is the suppression of stale claims which, with the attendant passage of time, inhibits a party's ability to mount an effective defense. Thus, "statutes of limitations are regarded as statutes of repose governing the period within which actions must be brought and are designed to compel the exercise of a right of action within a reasonable time, while the evidence remains fresh in the memory of the witnesses." Monroe v. Harper (1974), 164 Mont. 23, 26, 518 P.2d 788, 790. Statutes of limitations also serve to suppress the bringing of fraudulent claims.

The policy underlying the bar imposed by statutes of limitations is, at its roots, one of basic fairness. Our

- 4 -

system of jurisprudence is designed to achieve substantial justice through application of the law after the parties have had an opportunity to fully present both sides of a controversy. The failure to bring an action within a reasonable time is clearly not conducive to a full presentation of the evidence nor a search for the truth. Consequently, the law will not reward the plaintiff who sleeps on his or her rights to the detriment of a defendant. Rather, failure to bring an action within the statute of limitations constitutes a bar to the claim.

The legislature has determined that the statutory period to bring an action sounding in tort shall be three years. Section 27-2-204, MCA. Generally, the statute of limitations begins to run upon the occurrence of the last fact essential to the cause of action. See Heckaman v. Northern Pacific Railway Company (1933), 93 Mont. 363, 20 P.2d 258. "The fact that a person entitled to an action has no knowledge of his right to sue, or of the facts out of which his right arises, does not, as a general rule, prevent the running of the statute, or postpone the commencement of the period of limitation, until he discovers the facts or learns of his right thereunder." Kerrigan v. O'Meara (1924), 71 Mont. 1, 8, 227 P. 819, 822; Carlson v. Ray Geophysical Division (1971), 156 Mont. 450, 481 P.2d 427; and Bennett v. Dow Chemical Co. (Mont. 1986), 713 P.2d 992, 43 St.Rep. 221. Only the vigilant are viewed favorably under the law.

In the majority of cases, however, the wrongful act is easily identifiable and the injury simultaneous and obvious. Consistent with the underlying societal policy of fairness, this Court has recognized that the inherent nature of certain species of injury preclude a strict application of the statutory bar. See Grey v. Silver Bow County (1967), 149 Mont. 213, 425 P.2d 819. In Johnson v. St. Patricks Hospital

(1966), 148 Mont. 125, 417 P.2d 469, we concluded that a plaintiff should not be prevented from bringing an action when the injury is self-concealing. We therefore held that "where a foreign object is negligently left in a patient's body by a surgeon and the patient is in ignorance of the fact, and consequently of his right of action for malpractice, the cause of action does not accrue until the patient learns of, or in the exercise of reasonable care and diligence should have learned of the presence of such foreign object in his body." 148 Mont. at 132, 417 P.2d at 473.

Subsequent examination of the Johnson rationale has demonstrated that the logic underlying the discovery rule should not be limited to the narrow circumstance presented therein. We have consequently found the discovery rule to be applicable to other situations in which the injury is not readily apparent. See, Grey, supra (discovery rule applicable to any medical negligence in which the injury is self-concealing); Thompson v. Nebraska Mobile Homes Corp. (1982), 198 Mont. 461, 647 P.2d 334 (discovery rule applicable to strict liability claim); Iowa Mfg. Co. v. Joy Mfg. Co. (1983), 206 Mont. 26, 669 P.2d 1057 (discovery rule applicable to breach of warranty claim). When presented with the issue, the courts of other jurisdictions have also applied the so-called discovery rule to non-malpractice situations in which the injury is not readily apparent. See generally, Urie v. Thompson (1949), 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (silicosis); Brush Beryllium Company v. Meckley (6th Cir. 1960), 284 F.2d 797 (berylliosis); Thrift v. Tenneco Chemicals, Inc. (N.D. Tex. 1974), 381 F.Supp. 543 (thorium exposure); Wilson v. Johns-Mansville Sales Corp. (D.C. Cir. 1982), 684 F.2d 111 (asbestos exposure). The few courts who have been asked to apply the discovery rule to sexual molestation cases have refused to do so, however. See

DeRose v. Carswell (Cal.App. 1987), ___ Cal.App.3d ____, 242
Cal.Rptr. 368; Raymond v. Ingram (Wash.App. 1987), 737 P.2d
314; Tyson v. Tyson (Wash. 1986), 727 P.2d 226.

EW now urges this Court to extend the discovery doctrine
to instances of sexual molestation. We find such an
extension inappropriate under the facts of this case.

The central precept of Montana's discovery rule is that
the plaintiff was unaware, and could not reasonably have been
aware, of the wrongful act which later resulted in his or her
injury until after the statute of limitations had run. This
is not a case in which the plaintiff was unaware of the
tortious conduct or the injury has failed to manifest itself,
however. Rather, EW has consistently acknowledged that she
"always knew" she had been molested as a child and that she
has suffered from psychological problems since late
adolescence. For this reason alone, her claim must fail.

EW's alleged failure to understand her legal rights does
not save her claim. In Bennett v. Dow Chemical Company
(Mont. 1986), 713 P.2d 992, 43 St.Rep. 221, we were
confronted with an identical issue. The appellant therein
had been sprayed with toxic chemicals in 1979. Following a
medical examination shortly thereafter, appellant was
informed that he was suffering peripheral neuropathy as a
result of the exposure to the chemicals. He was not advised
of his right to a lawsuit until after the statute of
limitations had run, however.

In response to the theory now advanced, we concluded:

> . . . there is no Montana precedent for utilizing
> the discovery doctrine to toll the statute of
> limitations beyond discovery of the cause of an
> injury. However, appellant here would have us
> extend the doctrine for five years beyond the
> discovery of the cause of his injury up until the
> day he discovered his legal rights. Taken to its
> logical extreme, and in consideration with the

continuing development of new torts and property rights, appellant's position could have the effect of forever denying potential defendants the benefits of a statute of limitations.

713 P.2d at 995, 43 St.Rep. at 224.

The concerns expressed in Bennett are equally applicable here. Statutes of limitation serve an important purpose. It is not the function of this Court to render the statutory period provided by law meaningless. "Were this Court to adopt the rule urged by plaintiffs, the issue of when a cause of action accrued would not be resolved until the jury returned with a verdict . . ." Buhl v. Biosearch Medical Products, Inc. (D. Mont. 1985), 635 F.Supp. 956, 961.

EW was clearly aware of the wrongful conduct. Her failure fully to understand her legal rights is not sufficient to toll the running of the statute of limitations.

Nor does the failure to understand the causal relationship between the wrongful act and her injuries resuscitate the claim. The law does not contemplate such discovery as would give complete knowledge before the cause of action accrues. See Mobley v. Hall (1983), 202 Mont. 227, 657 P.2d 604. Rather, the discovery doctrine only tolls the running of the statutory clock until such time as the plaintiff, in the exercise of reasonable care and diligence, should have been aware of the wrongful act and injury.

We again note that, EW "always knew" she had been molested and had sought help for her psychological problems since late adolescence. Such knowledge is sufficient to require inquiry. "To allow a plaintiff, who fails to inquire into the cause of an injury, to avoid the time bar under the guise of 'discovery' would hopelessly demolish the protection afforded defendants by the statute." Much v. Sturm, Ruger &

Co., Inc. (D. Mont. 1980), 502 F.Supp. 743, 745-746. We decline to so hold.

Finally, it is argued that the running of the statutory period should be tolled because EW's injuries were not complete until after the statute of limitations had run. However, "it is not necessary to know the total extent of damages that an act causes to begin the running of the statute of limitations." Raymond, 737 P.2d at 317. See also Blasdel v. Montana Power Co. (1982), 196 Mont. 417, 640 P.2d 889 (cause of action accrues when damages stabilize); Heckaman, supra (cause of action accrues upon injury). Few are the injuries that could not someday develop additional consequences. To adopt the theory advocated by EW would again postpone the statutory period indefinitely.

Section 27-1-203, MCA, provides that "damages may be awarded . . . for detriment . . . certain to result in the future." In Frisnegger v. Gibson (1979), 183 Mont. 57, 598 P.2d 574, we construed § 27-1-203 consistent with the Montana practice of instructing juries that damages need only be reasonably certain. 183 Mont. at 71, 598 P.2d at 582. Under the Frisnegger rationale, EW could have presented evidence of, and received damages for, future harm, if any. She chose not to do so, however.

Upon reaching majority in 1973, EW had suffered more than sufficient damage to commence a cause of action. We will not toll the statute of limitations indefinitely on the basis of the supposition that additional damage might occur.

FRAUDULENT CONCEALMENT

In a related argument, EW contends that the discovery rule is applicable because DCH fraudulently concealed the wrongful nature of his relationship with EW. We find EW's argument strained at best.

"Fraudulent concealment has been described as the employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquisition of information disclosing a right of action." Monroe, 164 Mont. at 28, 518 P.2d at 790. While DCH's representations may have initially constituted a species of fraudulent concealment, such representations are not sufficient to cure EW's subsequent knowledge.

There is no indication that EW is incompetent or that she psychologically repressed the attacks. It is therefore not unreasonable to assume that EW, upon reaching majority, was aware that child molestation was a wrongful act; nor does she deny her awareness. The furor caused by the disclosure of the molestation and EW's subsequent references to molestation as a child when she visited psychologists further support this conclusion.

Reliance upon a fraudulent representation must be reasonable. EW's continued reliance on statements made during the late 1950's and early 1960's is not. At the very least, the state of facts was sufficient to cause a reasonable person to inquire.

### SUMMARY JUDGMENT

EW's final specification of error concerns the District Court's alleged determination of the validity of psychological evidence, namely, whether EW knew she had been wronged and whether her delay in discovering she had been wronged was reasonable.

Rule 56(c), M.R.Civ.P., provides that a motion for summary judgment is proper if "there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." From the evidence presented, it is clear that EW "always knew" that she had been sexually abused and that she was aware she suffered from psychological

- 10 -

problems.    Conclusory or speculative statements concerning the psychological intricacies of the mind in general are not sufficient to raise a genuine issue of material fact.    We therefore conclude summary judgment was proper.

Upon reaching majority in 1973, EW had three years in which to bring an action.    While this Court is aware of the horrifying damage inflicted by child molesters, it is not for us to rewrite the statute of limitations to accommodate such claims through judicial fiat.    Such a task is properly vested in the legislature.

The judgment of the District Court is affirmed.

_____
                        Justice

We Concur:

_____
        Chief Justice

_____

_____

_____

_____

_____
        Justices

- 11 -

Mr. Justice Fred J. Weber dissents as follows:

I would reverse the judgment dismissing the complaint. In my view, the plaintiffs have raised a valid argument for tolling the statute of limitations under the discovery rule.

In Bennett v. Dow Chemical Co. (Mont. 1986), 713 P.2d 992, 43 St.Rep. 221, this Court acknowledged that "a statute of limitations can be tolled until the plaintiff discovers the legal cause of his injury if equity so dictates." Bennett, 713 P.2d at 995. The Court cited Hornung v. Richardson-Merrill, Inc. (Mont. 1970), 317 F.Supp. 183. In that case, the plaintiff had filed a tort claim in 1968 as a result of cataracts. Plaintiff's damages were suffered prior to September 1963, but he argued that he did not know defendant's product was the cause of his cataracts until within two years of the filing of the action in 1968. The court denied defendant's motion for summary judgment, holding that plaintiff's claim of lack of knowledge of the cause of his injury was a factual question which should go to trial. Hornung, 317 F.Supp. at 185.

In her affidavit, EW states that her adult psychological problems have included nightmares, sexual dysfunction, difficulty in relationships with men, depression, suicide attempts, and drug and alcohol abuse. The essence of plaintiffs' argument for applying the discovery rule is that, although EW was always aware that she had been molested as a child, and had suffered from psychological problems since late adolescence, she was not aware until 1983 that her adult psychological problems were likely a result of the sexual molestation she suffered as a child. Plaintiffs offered to prove that while EW had received psychological counseling for a number of years prior to 1983, it was not until 1983 that a counseling professional alerted her to the connection between

12

her current problems and the childhood molestation. It appears that the court properly could have applied the <u>Bennett</u> theory that the statute of limitations could be tolled prior to 1983, when plaintiffs discovered the legal cause of EW's injury. I conclude that it would be appropriate to allow the plaintiff to present her facts to a trier of fact in order to determine whether or not the circumstances justify the tolling of the statute of limitations.

Since my view has not gained the support of the majority, I do agree with the majority's suggestion that the Legislature give its attention to special discovery rules for cases involving sexual abuse of children.

_____
Justice