JUSTICE RICE,
dissenting in part and concurring in part.
¶100 I dissent, and will address Issue 1. The Court holds that the application of the continuing tort doctrine to Appellants’ claims of nuisance and trespass does not require evidence of the continued migration of contaminants. In so doing, the Court concludes that only those nuisances and trespasses that cannot reasonably be remediated are burdened by a statute of limitations. In my view, this is an impermissible infringement on the Montana Legislature’s power to enact statutes of limitations and is inconsistent with this Court’s precedent regarding the continuing tort doctrine. The Court acts as if it is feasting at a smorgasbord of common law remedies from which it is free to pick and choose the remedies it fancies. In its common law meanderings, the Court doesn’t even recognize that we have a statute of limitations to be honored.
¶101 Section 27-2-207, MCA, imposes a two year statute of limitations for injuries to property, including nuisance and trespass claims. Section27-2-102(2), MCA, provides: “Unless otherwise provided by statute, the period of limitation begins when the claim or cause of action accrues.” Section27-2-102(l)(a), MCA, further provides “a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action.”
¶102 The statutory scheme, of course, does not provide a textual exception for continuing nuisance and trespass claims, though it does provide an exception for the discovery rule. See § 27-2-102(3), MCA. The Court concedes the statute of limitations for Appellants’ claims is not tolled by the discovery rule, but maintains that an extratextual, common-law exception, denominated as the continuing tort doctrine, tolls the statute. While the continuing tort doctrine is well established in the precedent of this Court, the doctrine cannot be applied to supplant the statutory scheme. In Montana “there is no common law *540 in any case where the law is declared by statute.” Section 1-1-108, MCA. And where the law is not declared by statute, the common law is applicable only so far as it does “not [] conflict with the statutes” of this State. Section 1-1-108, MCA. Any interpretation adopted by this Court of the continuing tort doctrine must be compatible with the statutory scheme and the Legislature’s intent to impose a two year statute of limitations on nuisance and trespass claims.[1]
¶103 Key to the continuing tort doctrine is that the complained of injury is (1) recurring and (2) remediable. 66 C.J.S. Nuisances § 6 (2009).[2] Even if the Court is correct in holding that Appellants have introduced sufficient evidence to raise a jury issue about whether the injury is remediable, the Appellants have failed to introduce evidence showing the injury is recurring. I believe this is to be fatal to their claim.
¶104 The Court devotes a sizeable portion of its opinion to attacking a straw man who, I gather, is pressing the Court to adopt a bright-line rule that migration is in every case the dispositive factor. Opinion, ¶ 29. In this regard, I agree with the Court that migration is not dispositive of the continuing tort doctrine in all cases. Nor is migration, for that matter, dispositive of the continuing tort doctrine in all environmental contamination cases. However, that is not the issue. The issue is whether migration is required under the facts of this claim. Here, migration is determinative of the Appellants’ claims because the Appellants cannot demonstrate a recurring injury without it. The Appellants have conceded the contamination is stabilized and the only other alleged recurring injury to their property is repeated property invasions stemming from the continued migration of contamination beneath their property and potentially into their groundwater. Absent migration the Appellants have but merely a single, unbroken, decades-long injury.
*541 ¶105 The continuing tort doctrine cannot be harmonized with the statutory scheme without a recurring injury. Fundamental to the doctrine is the principle that “[wjhen a court finds that a continuing nuisance has been committed, it implicitly holds that the defendant is committing a new tort” and thereby has “triggered] a new statute of limitations.” Lyons v. Twp. of Wayne, 185 N.J. 426, 433 (N. J. 2005); see also Burley, ¶ 14 (a new cause of action arises “each time that it repeats”). In this way, by requiring a plaintiff to demonstrate a recurring tort, we preserve the intent of the Legislature to impose a statute of limitations — in effect concluding that the Legislature intended to time-bar old torts, but did not intend to bar the new torts because “all elements of the claim or cause” have not occurred with respect to them. A necessary corollary is that we do not permit a plaintiffto recover damages for all injuries, but only those new injuries that have occurred within the statute of limitations period immediately preceding the filing of the complaint. Graveley Ranch, 240 Mont. at 23, 782 P.2d. at 373. However, when there ceases to be new torts the statute of limitations ceases to reset and the nuisance or trespass becomes permanent. 66 C.J.S. Nuisances § 6 (2009) (“A nuisance is permanent when there is only one unceasing invasion of the plaintiff’s interests, giving rise to only one cause of action, with damages assessed once and for all.”). A plaintiff must continue to demonstrate recurring torts to his property in order to continue triggering new statutes of limitations.
¶106 We have consistently required a recurring injury to trigger new causes of action. In Graveley Ranch, we concluded that “a new cause of action may arise each time a cow becomes ill or dies as a result of lead poisoning.” Graveley Ranch, 240 Mont. at 25, 782 P.2d at 375. We reasoned that the mere “fact that the nuisance continues does not make the cause of action a recurring one.” Graveley Ranch, 240 Mont. at 25, 782 P.2d at 373. We explained that there must be a new injury that with “[e]ach repetition” will “give[] rise to a new cause of action.” Graveley Ranch, 240 Mont. at 23, 782 P.2d at 373. Thus, we were explicit the recurring injury, the death or sickness of a cow, not the continuation of the nuisance, triggered new statutes of limitations.
¶107 In Haugen Trust, we concluded that the recurring trespass there, a recurring flood, gave rise to a new cause of action because each time it occurred it caused a new injury. Haugen Trust, 204 Mont. at 511, 665 P.2d at 1134. We explained, because the damage occurring from the floods varied “from occurrence to occurrence” depending on “each flood,” the “damage is not yet permanent” and “gives rise to a *542 separate cause of action each time it causes damages.” Haugen Trust, 204 Mont. at 513-14, 665 P.2d at 1135 (emphasis added). Again, we required a recurring injury to the plaintiffs property, another flood, to trigger a new cause of action.
¶108 In Blasdel, we again concluded that a flood, this time a flood stemming from a river backed up by a dam, tolled the statute of limitations until it ceased creating a recurring injury. Blasdel, 196 Mont. at 425, 640 P.2d at 894. We focused on the “intermittent” nature of the flooding and the recurring invasions of the plaintiffs’ property interest, explaining that the “source of the entire claim — the overflow due to rises in the level of the river — is not a single event.” Blasdel, 196 Mont. at 425, 640 P.2d at 894. Although the water continued to remain on the plaintiffs’ property after 1960, this was not enough to toll the statute of limitations. Blasdel, 196 Mont, at 426,640 P.2d at 894. We held instead that, while plaintiffs’ claims were tolled for a number of years, their claims accrued in 1960 when there ceased being new property invasions. Blasdel, 196 Mont. at 426, 640 P.2d at 894.
¶109 In Montana Pole, the Ninth Circuit, interpreting Montana law under a unique set of facts, held that contamination remaining on the plaintiffs property did not produce a recurring cause of action. Mont. Pole, 993 F.2d at 680. Montana Pole operated a wood treatment plan and used penta, a chemical preservative, which contaminated Montana Pole’s property. Montana Pole brought suit against the manufacturers of the penta for the chemical contamination of its property, arguing the continuing tort doctrine tolled the statute of limitations because the contamination remained on the property. Mont. Pole, 993 F.2d at 677. The Ninth Circuit disagreed, noting that Montana recognizes a continuing tort claim only where the injury is “recurring and abatable,” and the theory is that each new injury “gives rise to a separate cause of action.” Mont. Pole, 993 F.2d at 679. The court explained that the “argument that the injury continued into the statutory period because the penta contamination remained on the property is simply unpersuasive.” Mont. Pole, 993 F.2d at 680. Rather, the corat, quoting Graveley, concluded that “ ‘the fact that the nuisance continues does not make the cause of action a recurring one.’ ” Mont. Pole, 993 F.2d at 680 (quoting Graveley Ranch, 782 P.2d at 373, 240 Mont. at 23).
¶110 Finally, in our seminal case, Burley v. BNSF, we held that contamination that “continues to migrate, will toll the statute of limitations until the harm no longer reasonably can be abated.” Burley, *543 ¶ 99.[3] After writing several pages of analysis to determine whether migration would be relevant to our decision, considering our precedent, and the policies behind the doctrine we concluded the “fact that a nuisance continues to migrate constitutes an important factor under Montana law in evaluating whether the pollution should be treated as continuing trespass or nuisance.” Burley, ¶ 73. We explained that the continuing tort doctrine applies only if there is an “injury that gives rise to a new cause of action each time that it repeats.” Burley, ¶ 14 (emphasis added). We explained that migration provides a recurring cause of action because of the recurring property injury: “Each entry of pollution onto a party’s property caused by its migration constitutes a new cause of action.” Burley, ¶ 68. Specifically, we reasoned that the migrating pollution at issue continued to advance onto the plaintiffs property constituting a new “property invasion,” which “fits Montana’s historical definition of a continuing temporary injury.” Burley, ¶ 73. Therefore, we were explicit in detailing the unique injury migration provides, and once again, in accordance with precedent, required a recurring injury to trigger new causes of action.
¶111 Nonetheless, the Court today draws a completely different conclusion from Burley. While the Court does not dispute that migration was an “important factor” to our decision, it attributes migration’s significance to the potential to affect abatement of the iqjury. Opinion, ¶ 33. The Court’s reading is impermissible for a number of reasons. First, nowhere in our lengthy analysis iaBurley did we state that migration was an “important factor” because it affected remediation of the contamination. However, we did explicitly state the factors necessaiy to discern whether the contamination was reasonably abatable:
Courts should evaluate whether it would be reasonable for the tortfeasor to abate the harm taking into account all factors, including the ease with which the harm could be abated. Other factors include the cost of the abatement, the type of property affected, the severity of contamination, and the length of time necessary to remediate such pollution.
*544 Burley, ¶ 89. Migration is not among the factors. Second, in the twenty-four paragraphs we used in Burley to attempt to track the contours of the reasonable abatement standard there is little mention of the “important factor” of migration — using the word “migration,” in all, a single time. Third, in no other case have we ever explained that migration affects abatement. In Burley, we relied on our decisions in Walton, Blasdel, Haugen Trust, Nelson, and Graveley Ranch to conclude that migration was an important factor to our analysis. Burley, ¶ 71. There is nothing in these cases to suggest that migration impacts abatement, andit would likely have been inappropriate for the Court to make that conclusion, without citing expert testimony in any of those cases and lacking the technical expertise itself.
¶112 Lastly, the Court’s reasoning is inherently self-defeating. The Court completely ignores the elephant in the room: in Burley, migration was an important factor serving to establish a continuing tort, but under the Court’s abatement standard migration serves only to prevent a continuing tort.
¶113 In Burley we explained, in so many words and in so many different ways, that migration was a factor supporting the plaintiffs position that the contamination constituted a continuing tort. Burley, ¶ 68 (“considering] migrating property contamination to constitute a continuing temporary tort.”) (emphasis added); Burley, ¶ 73 (“The reasoning and outcomes of these Montana cases leads us to conclude, as further explained below, that a nuisance of a continuing temporary nature includes migrating pollution.”) (emphasis added); Burley, ¶ 73 (“The migrating pollution in the instant case, though stabilized in terms of concentration levels, fits Montana’s historical definition of a continuing temporary injuiy.”) (emphasis added); Burley, ¶ 73 (“A defendant’s failure to stop the continuing migration of a nuisance onto a plaintiffs property, where it reasonably can be stopped, constitutes a continuing property invasion.”) (emphasis added); Burley, ¶ 68 (“Each entry of pollution onto a party’s property caused by its migration constitutes a new cause of action.”) (emphasis added); Burley, ¶ 73 (“To classify as permanent a nuisance that continues to migrate could bar a plaintiff from bringing a nuisance action, even if the contamination from a defendant’s tortious actions continues to affect different parts of her land each day.”).
¶114 However, the Court rewrites Burley to effectuate a complete turnabout with respect to migration. Under the reasonable abatement standard, migration’s only relevance is to show that abatement will be difficult, Opinion, ¶ 35, meaning migration is a factor wholly *545 supporting ARCO’s position that the contamination does not constitute a continuing tort.
¶115 There is simply no two ways about it. Migration played an entirely different role in Burley than it plays in the Court’s opinion. In Burley migration was a factor counseling in favor of tolling the statute of limitations, but now the Court places migration entirely on the other side of the ledger. The Court doesn’t even bother to address its error in logic or the obvious contradiction this creates in our jurisprudence. Any sensible reading of Burley leads to the conclusion that migration has legal import outside of abatement.
¶116 In sum, the Court’s interpretation of Burley lacks both merit and logic. Migration provides a recurring injury. And, in turn, a recurring cause of action. Burley, ¶ 68 (“Each entry of pollution onto a party’s property caused by its migration constitutes a new cause of action.”). This is why it is an “important factor.” The Court’s nonsensical reasoning will ultimately come at the confusion of future parties.[4] If the Court wishes to overrule Burley it should expressly do so. The citizens and practitioners in Montana deserve to know the rule of law.
¶117 Next, the Court relies on Shors, which we decided two decades prior to Burley and a year prior to the Legislature’s passage of § 27-2-102(l)(a), (b), MCA. In Shors, a developer, Branch, subdivided property and granted the lot owners of the subdivided property access to the Middle Fork of the Flathead River via a Declaration of Restrictions contained within the parties’ contracts. In 1976, Branch placed a locked gate across the road in violation of the Declaration of Restrictions. Several of the lot owners, including Shors, filed an action against Branch in 1982 for interference with their access to the river. Shors, 221 Mont. at 396, 720 P.2d at 243. The district court concluded that Branch had “unlawfully and unreasonably restricted Plaintiffs’ right of access, in derogation of the Declaration of Restrictions ... .” Shors, 221 Mont. at 397, 720 P.2d at 243. On appeal, we addressed whether the plaintiffs’ claim for damages for interference with their access to the river was barred by the statute of limitations. Shors, 221 *546 Mont, at 394,720 P.2d at 241. We answered in the negative. We first reasoned the plaintiffs were entitled to damages and their claim was not time-barred because it “soundfed] in contract, with an 8 year statute of limitation under Section 27-2-202, MCA.” Shors, 221 Mont. at 397, 720 P.2d at 243. After concluding the statute of limitations did not bar their claim, we further provided an additional rationale, reasoning that the continuing tort doctrine also tolled the statute of limitations for injuries to property. In a single sentence of analysis, we concluded “that blockage of plaintiffs’ access to the river by the gate was a continuing tort, [sic] because it was easily abated.” Shors, 221 Mont. at 397, 720 P.2d at 243-44.
¶118 Even if the limited analysis in Shors, although questionable, is susceptible to the Court’s interpretation that abatement is the sole inquiry under the continuing tort doctrine, I would not permit Shors to control here. First, the continuing tort analysis in Shors was unneeded. We had already concluded that the plaintiffs’ claim was not barred by the statute of limitations prior to our analysis concerning the continuing tort doctrine. Second, Shors is inconsistent with prior decisions, including among others Burley and Blasdel. As explained above, we have consistently required a recurring injury. Notwithstanding the Court’s poor attempt to mischaracterize Burley, we confirmed in Burley that a plaintiff must demonstrate a recurring injury — Shors stands in direct conflict with Burley. Likewise, the Court’s approach renders Blasdel no longer good law. Although the Court explains that “ Blasdel was an inverse condemnation case,” Opinion, ¶ 30, the principles announced in Blasdel are engrained in this Court’s case law, and it has been cited as much, if not more than, any other case.[5],[6] Burley, ¶ 21. Third, while we did not find it relevant to the continuing tort doctrine analysis in Shors, there was seemingly *547 a recurring iiy'ury there. We noted expressly that the “gate was left open” at times. Shors, 221 Mont. at 398, 720 P.2d at 244. Lastly, Shors was decided a year prior to the Legislature’s passage of § 27-2-102(1), (2), MCA.[7] Sec. 1, Ch. 441, L. 1987. Thus, because the accrual tíme was decided entirely under common law, we did not have to contend with the will of the Legislature as we must do today.
¶119 The Court departs from previous decisions and follows Shors based principally on the idea of certainty. Opinion, ¶ 32. The Court forcefully “declinets] to leave the operation of the law to chance,” reasoning that migration cannot be determinative because if so “continued liability would be determined by factors not within the control of the parties, such as soil characteristics or the flow of groundwater.” Opinion, ¶ 32 (emphasis added). Rather, the Court concludes the sole inquiry must be abatement because, as the Court explains, then continued liability will depend instead on factors within the control of the parties, such as “soil” characteristics and the flow of “shallow groundwater.” Opinion, ¶ 38. The Court’s reasoning is unfortunately no better with regard to policy than it is with the law. Because we decided in Burley to focus on the injury rather than conduct to establish new causes of action, continued liability will always depend on factors not within the control of the parties.[8],[9]
¶120 However, the continuing tort doctrine is not without a polity justification. The continuing tort doctrine attempts to act as counterweight against the defendant’s interest in certainty provided for in a statute of limitations by protecting the plaintiffs interest in remedying his injury when damages are largely uncertain. Burley, ¶ 41 *548 (“We discern one consistent theme in reviewing the historic decisions of this Court that evaluate whether a nuisance should he classified as temporary or permanent: whether the injury is sufficiently complete to ascertain permanent damages.”). In fact, we have often differentiated between permanent torts and temporary torts based upon whether the damages were ascertainable, with the tort becoming permanent when the damages became certain. Burk Ranches v. State, 242 Mont. 300, 306, 790 P.2d 443, 447 n.2 (1990) (“ ‘permanent injury’ refers to whether the injury has stabilized enough that the extent of the damage has become reasonably certain.”); Graveley Ranch, 240 Mont. at 24-25,782 P.2d at 371 (“a permanent nuisance is one where the situation has ‘stabilized’ and the permanent damage is ‘reasonably certain.’ ”); Haugen Trust, 204 Mont. at 513, 665 P.2d at 1135 (“A permanent injury is one where the situation has ‘stabilized’ and the permanent damage is ‘reasonably certain.’ ”). Because new injuries give rise to additional damages — whether it be another flood (Haugen Trust, Walton, and Blasdel), additional glue waste (Nelson), increased traffic, noise, and dust (Knight), or migrating pollution (Burley) — a plaintiff’s damages are necessarily more difficult to ascertain when there is a recurring injury. Recurring injuries produce new and uncertain damages. But when there is no recurring injury, there is no uncertainty. As illustrated here, the Appellants’ damages were just as ascertainable on April 17,2006 as they were in the years preceding. The rationale underpinning the continuing tort doctrine provides no justification for continuing to toll the statute of limitations where, as here, the damages were ascertainable long ago.
¶121 In contrast, the policy underpinning the other side of the scale supports the accrual of the cause of action prior to April 17, 2006. “Statutes of limitation serve an important purpose.” E.W. v. D.C.H., 231 Mont. 481, 486, 754 P.2d 817, 820. They exist to suppress stale and untimely claims even if otherwise viable and sympathetic. E.W., 231 Mont. at 486, 754 P.2d at 820. By penalizing delay, they compel litigants to bring their claims “within a reasonable time to enable the opposing party to mount an effective defense.” Mont. Pole, 993 F.2d at 678. And they are of no less importance in the context of environmental contamination where the earlier pollution is remediated the better it is for the parties and the public.
¶122 Although the Court acknowledges these purposes, it does not elaborate on how they will be promoted by its decision, offering only that the abatement standard will “promot[e] finality*” Opinion, ¶ 33. Of course, the Court’s decision will not advance the purposes of statutes of limitations any more than the abatement standard *549 promotes finality. Creating perpetual tort liability does compel litigants to bring their claims in a reasonable time, it does not safeguard an opposing party’s ability to mount an effective defense, and it does not encourage early remediation of environmental contamination. What it does is to ensure that a claim will be brought when it is expedient for the litigant pursuing damages, in disregard to the interests of the opposing party and the public. For those who are alleged to have pounded a post in the wrong pasture, poured a driveway past the property line, or dug a ditch for a gas line outside an easement, the Court’s decision guarantees they must be prepared to mount a legal defense for all time. As for finality? and the cleanup of environmental contamination, that will come at a time of the claimants own choosing, possibly decades after damages have become ascertainable, provided he can overcome the sole impediment that is the Court’s flimsy reasonable abatement standard: (1) “can be reduced” Opinion, ¶ 37; (2) “by some means.” Opinion, ¶ 45.
¶123 In short, I cannot agree that the Legislature, by providing “[wjithin 2 years is the period prescribed for the commencement of an action for injury to or waste or trespass on real or personal property” intended to impose a 2 year statute of limitations on only those injuries that are incapable of abatement. Nor can I agree that the Legislature by writing “[u]nless otherwise provided by statute, the period of limitation begins” when “all elements of the claim or cause exist or have occurred” intended the statute of limitations for nuisance and trespass claims to be tolled for as long as the claimant sees fit. The Court did not create the continuing tort doctrine today. But, in a decision that is wanting on text, precedent, policy, and much too often sound reasoning, the Court did expand the doctrine at the expense of power that is properly reserved for the Montana Legislature.
¶124 Given that my primary dispute with the Court is its holding Tinder Issue 1, and the lengthy discussion necessitated thereby, I will not address the remaining issues. I believe that the record does not support the existence of migration necessary to establish a recurring injury. I agree with the District Court’s reasoning under the discovery rule, and thus concur with the Court’s resolution of Issue 4.

 There is authority for the proposition that the common law doctrine of continuing tort and the statutory rule of accrual are incompatible. See Jensen v. General Elec. Co., 82 N.Y.2d 77, 84, 623 N.E.2d 547, 549 (N.Y. 1993) (concluding that the legislature intended no continuing tort exception to the statute).

 Justice Baker’s concurrence adopts this standard and offers a similar line of reasoning, with which I largely agree. Concurrence, ¶ 80. However, while I agree that the recurring prong is based principally on the idea of ascertainment of damages, I disagree with the concurrence’s characterization of the injury in terms of stabilization (as it uses the term) and its implicit conclusion that the recurring prong is necessarily a jury question.

 It should come as no surprise that the plaintiffs in Burley, well aware of our case law, argued that the contamination produced a recurring injury. The plaintiffs reasoned “the new contamination will continuously arrive and cause new injury to plaintiffs property,” and “key to answering the certified question rests on the fact BNSPs contamination is still migrating.” Brief for Appellant at 1, 14, Burley v. Burlington N. & Santa FeRy. Co., http://courts.mt.gov/library (June 8,2011) (No. 11-0021).

 For instance, it is the Appellants that maintain there is evidence of migration, and it is ARCO who steadfastly denies that the contamination is migrating. If migration’s importance lies with abatement, the parties are arguing against their own interests: ARCO should be arguing that there is migration, and the Appellants should be arguing that there is not migration. Yet, by upholding Burley, which stands for the proposition that migrating pollution makes it easier for a plaintiff to demonstrate a continuing tort, the Court complicates matters beyond comprehension.

 We have favorably cited Blasdel in our decisions in Haugen Trust, Graveley, Burley, and E.W. v. D.C.H.

 In regard to Blasdel, the Court also explains, “More importantly, however, our inquiry in Blasdel concerned the nature of the injury to the property owners, recognizing that the ‘source of the entire claim’ was the ‘overflow due to rises in the river,’ which was identified as a continuing event.” Opinion, ¶ 30. The point the Court is attempting to make with this statement is beyond my comprehension. In Blasdel, the water remaining on the property was not enough to toll the statute of limitations — new causes of action ended with the cessation of new injuries. Under the Court’s reasoning, contamination remaining on the property may forever toll the statute of limitations. This is inconsistent with the holding in Blasdel. Consequently, Blasdel is no longer good law.

 Section 27-2-102, MCA, went through extensive revisions in 1987, including providing a start date for statutes of limitations and the codification of the discovery doctrine.

 There are several states that utilize a conduct-based approach. In those states, the statute of limitations would have begun to run in this instance in 1980 when the smelter closed and the defendant’s conduct ended. See Marin v. Exxon Mobil Corp., 48 So. 3d 234, 254 (La. 2010).

 The states that utilize an injury-based approach as we do and have considered both migrating contamination and non-migrating contamination have concluded that migration is necessary to continue tolling the statute of limitations. Compare Carpenter v. Texaco, Inc., 646 N.E.2d 398, 399-400 (Mass. 1995) with Taygeta Corp. v. Varian Assocs., 763 N.E.2d 1053, 1064-65 (Mass. 2002) and compare Modern Tractor & Supply Co. v. Leo Journagan Constr. Co., 863 S.W.2d 949, 951 (Mo. Ct. App. 1993) with Cook v. De Soto Fuels, Inc., 169 S.W.3d 94, 105 (Mo. Ct. App. 2005).